## Thomas W. Lockwood v. Henry W. Beckwith and Another.

If one member of a copartnership enter into a transaction on his own behalf which is within the scope of the partnership business, his copartners may insist that it is a fraud upon them, and claim the benefits resulting from it. But this is a right which partners alone can assert, and is not available to third persons, for the purpose of fixing a liability upon the partnership, when such claim has not been asserted.

The acts and declarations of a partner actually engaged in an adventure in his own name, can not be proved for the purpose of fixing a liability upon the partnership in respect to such adventure.

A party seeking to make a set-off in equity beyond that given by the statute, must affirmatively show the existence of all those facts necessary to raise the equity.

A court of equity will not allow a set-off in a case where the law would not, unless there be special equities, growing out of the transaction itself, requiring it.

Where a partnership became insolvent, and made a general assignment for the benefit of creditors, including therein a note past due, and the maker of the note held the acceptance of the partnership not then due, — *Held*, That the insolvency of the acceptors was not, of itself, sufficient to authorize a set-off in equity of the acceptance against the note in the hands of the assignee, in the absence of evidence that the acceptance was based upon the note, or that the maker of the note trusted to it, at the time, as a means of discharging his obligation.

*Heard October 6th and 7th.    Decided December 9th.*

Appeal by defendant Beckwith from the Wayne Circuit in Chancery.

The defendant Thomas having deposited with Barstow & Lockwood, as attorneys, certain notes, mortgages, and other claims for collection, subsequently, on the 12th of May, 1849, executed and delivered to the firm of W. C. & A. A. Hunter a note for $2000, and two months thereafter, by an assignment under seal, transferred all the claims in the hands of Barstow & Lockwood to the Hunters, as collateral security for said note, stating in the assignment that the note was given for borrowed money. This assignment was deposited by the Hunters with Barstow & Lockwood; and they having collected some $800 on the claims, Thomas notified them not to pay the same to the Hunters, nor to deliver to them the claims, as he had paid the note, and the purposes of the assignment were accomplished.

LOCKWOOD *v.* BECKWITH.

On the 24th of August, 1850, the Hunters made a general assignment to Beckwith, for the benefit of their creditors. The $2000 note was passed to Beckwith among their assets; and he claimed the moneys so collected by Barstow & Lockwood to apply upon it.

Barstow & Lockwood thereupon filed their bill of interpleader to determine to whom they should pay the money and account for the proceeds of the claims in their hands.

Barstow having died pending the suit, it was revived and brought to a hearing in the name of Lockwood, as survivor.

Beckwith and Thomas answered, setting up the facts upon which their respective claims were founded, the important portions of which are substantially as follows:

On the 25th of October, 1848, Thomas entered into an agreement with a firm by the name of Enos & Co., to furnish them a quantity of wheat, which they were to manufacture into flour, and sell on his account. The performance of this agreement on the part of Thomas was guaranteed by A. A. Hunter, one of the firm of W. C. & A. A. Hunter, by a writing attached thereto.

On the 15th of November, 1848, Thomas gave Enos & Co. a note for $850, which was also guaranteed by A. A Hunter. On the 16th of the same month, A. A. Hunter delivered to Thomas a paper, of which the following is a copy:

"I take half int. [interest] 3000 barrels of flour, more or less, proceeds of wheat in Enos's hands, grinding for E. Thomas." "A. A. HUNTER." "Buffalo, Nov. 16, 1848."

Thomas insists that this whole business was a joint operation between himself and the firm of W. C. & A. A. Hunter, and not the individual undertaking of A. A. Hunter, and he having met with a loss of some $4000 under the Enos contract, for which judgment was recovered against him subsequent to the assignment by the Hunters to Beckwith, he contends that the half of this sum should be applied in satisfaction of the $2000 note.

LOCKWOOD *v.* BECKWITH.

On the 25th of July, 1850, Thomas made his draft on the firm of W. C. & A. A. Hunter, for $1000, payable sixty days after date, which was accepted by the drawees, but remained in his hands unpaid, and not due, at the time the Hunters assigned. Thomas claims that this, also, should be set off against the $2000 note.

In his answer, Thomas alleges that this $2000 note was given for the balance of an account of W. C. & A. A. Hunter against him, while Beckwith insists that it was given for borrowed money; but no testimony was taken on this point.

The firm of W. C. & A. A. Hunter had, in 1848, two offices — one in New York, under the charge of W. C. Hunter, and one at Buffalo, conducted by A. A. Hunter; and they were principally engaged in the produce and commission business. The sign over the office in Buffalo was that of the firm.

There was evidence in the case that A. A. Hunter stated that the firm were interested in the Enos contract, and that he several times made purchases of produce, &c., in his own name, making the payments in the checks of the firm, or in drafts drawn upon the firm, and that he represented these purchases to be made on behalf of the firm.

*D. C. Holbrook*, and *R. P. Toms*, for Beckwith :

1. Where a party deals with a partner in his individual name, and not in the name of the firm, such name being known to the party, the firm, is not liable. — *Story on Part.* §§ 102, 134, 136. Even if the firm was interested in the Enos contract, Thomas having contracted with A. A. Hunter individually, he can only look to him for indemnity. — *Story on Part.* § 140, *and cases cited.*

2. If, as Thomas swears in his answer, the $2000 note was given in settlement of accounts between him and the Hunters, the presumption is that the Hunters were not at that time indebted to him. — 5 *Denio*, 304; 16 *Johns.* 226.

3. As the $1000 acceptance was not due or payable at the time of the assignment by the Hunters, it could not have been then set off against the note, had it been brought. And as the demands were wholly unconnected, and no credit existed by which one was to pay the other, a set-off can not be now allowed in chancery. — 2 *Story Eq. Juris.* §§ 1434, 1435; *Shermerhorn v. Anderson,* 2 *Barb.* 584; *Keef v. Lord,* 2 *Duer,* 78; *Hicks v. McGrouty, Ibid.* 295. The insolvency of the Hunters has nothing to do with the case — the right of set-off by reason of insolvency is denied and repudiated. — *Howe v. Shepard,* 2 *Sumn.* 409; *Gordon v. Lewis, Ibid.* 628; *Greene v. Darling,* 5 *Mason,* 201; *Story Eq. Juris.* § 1436, and cases cited in note.

*H. K. Clarke,* for Thomas:

1. "Mutual credit" is the ground of a set-off in equity, especially where there are equitable circumstances which support its application. For what is understood by "mutual credit," see 2 *Story Eq. Juris.* § 1425; 1 *Atk.* 230; 37 *T. R.* 507; 5 *Paige,* 595. As to the equitable doctrine: 5 *Ves.* 108; 1 *P. Wms.* 326; 3 *Hare,* 568; 4 *Y. & C.* 351; 8 *Ala.* 206; 6 *Dana,* 31; 4 *Day,* 472. Insolvency is one of the circumstances which courts of equity regard as justifying an equitable set-off. — 5 *Cush.* 194; 20 *Mo.* 298; 2 *Paige,* 581; 4 *Edw.* 537; 2 *Barb.* 258.

2. A general assignee for the benefit of creditors is not a purchaser for value. He can claim no other rights than those which his assignor might assert, if acting in his place. A debt not due at the time of the assignment may be set off against the assigned claim. — 10 *B. & C.* 777; 3 *T. R.* 435; 13 *Ves.* 67.

3. A partnership may be bound by a transaction in the name of one partner, as well as by the joint name, if it be within the scope of the partnership business. — 12 *Pick.* 430; 5 *Pet.* 529; 1 *B. & C.* 146.

4. One member of the firm can not lawfully carry on the

business in which the firm is engaged on his separate account. — *Story on Part.* §§ 174, 177, 178; *Coll. on Part.* §§ 179, 184, 185, 186, 212.

5. The partnership being established, the acts and declarations of one partner in matters relating to the affairs of the partnership will be evidence against the firm. — *Coll. on Part.* § 779; *Story on Part.* § 107; 16 *Wend.* 505; 1 *Greenl. Ev.* § 112; 4 *D. & R.* 7; 1 *Taunt.* 104.

6. Special circumstances will sometimes create an equity which will justify the set-off of a joint against a separate debt. — 3 *Meriv.* 617; *Story Eq. Juris.* § 1437; 11 *Ves.* 24; 12 *Ves.* 346; 1 *Gallis.* 630. The special circumstances in this case are found in the series of transactions between Thomas and the Hunters, from which Thomas might reasonably infer that he had the obligation of both in all his dealings with A. A. Hunter.

MARTIN Ch. J.:

Two questions are raised by the parties interpleading, for our determination: 1st, Whether Thomas is entitled to set off the one-half of the judgment obtained on what is called the Enos contract, being about two thousand dollars, against the note for two thousand dollars, in Beckwith's hands; and, 2d, Whether he is entitled to set off the one thousand dollar acceptance of the Hunters against such note.

The claim to set off the one-half of the judgment obtained on the Enos contract, is based upon the proposition that the firm of W. C. & A. A. Hunter was interested in the contract, and was of course bound by the judgment, and liable to contribute towards its satisfaction. An examination of the testimony satisfies us that no such liability exists. W. C. Hunter never had any interest in that contract, was never a party to it, and is of course not bound by the judgment. A. A. Hunter was individually interested in the contract, and it was his private adventure; there is no evidence that W. C. Hunter ever had any knowledge

of, or participation in, it, or that he was regarded by any one as connected with it, until this claim of set-off was made. While it is true that a partnership may be bound by a transaction in the name of one partner, as well as by the joint name, if it be within the scope of the partnership business, yet this is only true when the transaction is one in behalf of the partnership, and not of a member. If a member enter into a transaction in his own behalf, which is within the scope of the partnership business, his co-partner may insist that it is a fraud upon him, and claim the benefit resulting from it; yet this is a right which the partner can alone assert, and is not available to third parties for the purpose of fixing a liability upon the partnership, when such claim has not been asserted. Nor, under such circumstances, will the acts and declarations of the partner actually engaged in the transaction in his own name, bind the partnership so as to affix a liability upon it. As the transaction is ostensibly and primarily his own, and in fraud of his co-partner, if he chooses so to regard it, A. A. Hunter can not add to this fraud the further one of making the partnership liable upon his individual adventures, by his voluntary acts and declarations.

It is further insisted that Thomas is entitled to have the amount of the one thousand dollar acceptance set off against this note.

There is no evidence in the case tending to show for what purpose, or under what circumstances, the acceptance was given. All we know is the simple fact that Thomas, on the 25th of July, 1850, drew upon the Hunters for one thousand dollars, at sixty days, and that the draft was accepted by them. We are not even informed in whose favor the draft was drawn—in fact, the presumption is that it was in his own favor, as he alleges that he held the acceptance at the time of the assignment by the Hunters to Beckwith, and it had then some thirty days to run. It may have been made as accommodation paper, and, this failing, the accept-

ance remained in Thomas's hands. Whatever may have been
the fact, the Court will infer nothing in favor of this claim;
for the relief being purely equitable, and beyond that given
by the statutes of set-off, the party asking it must affirma-
tively show the existence of those facts necessary to raise
the equity. Although at law the acceptance is *prima facie*
evidence of funds in the hands of the acceptor, yet equity
requires something more than a *prima facie* case upon which
to act, in cases requiring a departure from the statute in af-
fording the remedy. Thomas, it must be remembered, is,
as to this claim of set-off, in the position of one seeking
relief; for there is no pretence that he has actually paid the
two thousand dollar note, or any part of it. He asks the Court
to appropriate the amount of that acceptance upon the note;
and the *onus* is cast upon him to establish his equitable
title to such relief.

Now, at law, he had, at the time of the assignment by
the Hunters to Beckwith, no right to set off the amount
of this acceptance against the note, as it was not due; and
it is upon their rights, as they then existed, that we are
asked to adjudicate. Has he any such equitable right? As
the case is presented to us, we have only evidence, at the
most, of the existence of cross demands between them, one
only of which was due. It appears that in May, 1849, the
note for two thousand dollars was given by Thomas to the
Hunters, and that, in July of that year, he assigned to them
the securities out of which this controversy arises. This
note is certainly not evidence of any prior dealings, nor of
the existence of any mutual credits between the parties.
Upon this point of their dealings, there is again no testi-
mony. Thomas alleges that the note was given for the
security of a balance of his account with the Hunters;
but we have no evidence that any such account ever
existed, and in his assignment of the securities, he al-
leges that it was given for borrowed money; and so Beck-
with insists the fact to be. Nor is there testimony of

any subsequent dealings or credits between Thomas and the Hunters. The evidence is altogether silent upon this point also. The only thing which clearly appears, is the fact that Thomas assigned certain demands to secure this two thousand dollar note; but what is their amount and value, is not shown nor stated. Whether they amounted to two thousand dollars, or exceeded that sum, we can not ascertain — all we know, is, that only eight hundred dollars has yet been collected out of them. From this fact, certainly, no presumption of equity can arise in favor of this claim of set-off. The existence of mere cross demands is no ground for this relief.

Nor does the fact of the Hunters' insolvency and assignment before the acceptance fell due, of itself, raise an equity of set-off, although it is a circumstance which, in connection with the fact of the existence of a mutual credit, will justify such set-off. Although there is much doubt thrown over this branch of the law, and conflict of authorities, yet we think the true rule to be, that the debt must have existed as a mutual credit, at the time of the assignment to Beckwith, to authorize the set-off. The equity must attach to the demand, and not to the person of the debtor. Judge Story, in 2 *Eq. Juris.* § 1435, says, that "independently of the statutes of set-off, courts of equity, in virtue of their general jurisdiction, are accustomed to grant relief in all cases, where, although there are mutual and independent debts, yet there is a mutual credit between the parties, founded, at the time, upon the existence of some debt due by the crediting party to the other. By mutual credit, in the sense in which the terms are here used, we are to understand a knowledge, on both sides, of an existing debt due to one party, and a credit by the other party, founded on, and trusting to, such debt, as a means of discharging it." It has been repeatedly said that, in the matter of set-off, courts of equity follow the law, and will not allow set-off in cases where the law will not, unless there

be special equities growing out of the transaction itself, requiring it; and in this case we discover none.

The decree of the court below must be reversed, and a decree entered for Beckwith, in accordance herewith, with costs.

MANNING and CHRISTIANCY JJ. concurred. CAMPBELL J. did not sit in this case, having been counsel for one of the parties.