MECHANICS' BANK OF DETROIT *v.* STONE.

1. EQUITABLE SET-OFF—INSOLVENCY.

    Mere insolvency is insufficient to justify the equitable set-off of a claim not due.[1]

2. SAME—BANKS AND BANKING.

    A bank at L. sent to its correspondent in D. two promissory notes, payment of which it guaranteed, in renewal of notes of similar character, which had been discounted by the bank at D., and the proceeds placed to the guarantor's credit. Before these notes matured, the L. bank became insolvent, and passed into the hands of a receiver, who made demand upon the D. bank for a balance of account; whereupon the latter filed a petition in the equity court, asking leave to treat the guaranteed notes as an equitable set-off. *Held*, that the petition was properly denied.

Appeal from Ingham; Person, J.    Submitted January 4, 1898.    Decided February 16, 1898.

Petition by the Mechanics' Bank of Detroit against George W. Stone, receiver of the Central Michigan Savings Bank of Lansing, for permission to treat as an equitable set-off against a claim of the receiver certain notes guaranteed by the insolvent bank. From an order denying the prayer of the petition, petitioner appeals. Affirmed.

*Bowen, Douglas & Whiting*, for petitioner.

*Cyrenius P. Black*, for defendant.

HOOKER, J.    The Mechanics' Bank of Detroit was, on the 18th day of April, 1893, indebted to the Central Michigan Savings Bank of Lansing in the sum of $4,000

---

[1] The authorities on the effect of the immaturity of a claim at the time insolvency occurs upon the right of set-off are marshaled in a note to *Fera* v. *Wickham*, (N. Y.) 17 L. R. A. 456.

and upwards upon account; the former being the Detroit
correspondent of the latter.   On that day the Central
Bank went into the hands of a receiver, being hopelessly
insolvent.   At that time it was guarantor of the payment
of two notes of $5,000 each, renewals of notes of similar
character, which it had discounted at the Detroit bank
some time before, and for which it had been given credit
on account.   These notes fell due on April 29th, at which
time the Detroit bank indorsed upon them the amount of
the balance standing to the credit of the Lansing bank
upon its books, and shortly afterwards it indorsed another
trifling item.   Demand being made by the receiver upon
the Detroit bank for the payment of the balance of the ac-
count as it stood on April 18th, a petition was filed on
behalf of that bank, asking that it be allowed to treat the
amount indorsed as an equitable set-off.   The circuit
court denied the prayer of the petition, and we are asked
to review the case upon appeal.

Counsel for the petitioner cite many well-considered
cases to sustain the proposition that equity will treat in-
solvency as a sufficient ground for allowing a set-off of
claims, although not strictly "mutual credits," and not
within the rule applied by courts of law, and notwith-
standing the fact that the claim sought to be set off is not
due at the time of the assignment of the insolvent estate.
But this has never been the rule in this State in cases
where there are not "mutual credits."   There were no
"mutual credits" here.   Not only was it not expected
that the fund would be kept towards the payment of the
notes, but the notes were given, in the first place, for the
purpose of securing a fund which should be subject to
the check of the Lansing bank.   This court has said
several times that mere insolvency was insufficient to
justify an equitable set-off of a claim not due.   *Lockwood*
v. *Beckwith,* 6 Mich. 174 (72 Am. Dec. 69); *Hale* v.
*Holmes,* 8 Mich. 41; *Kinney* v. *Tabor,* 62 Mich. 527.

It is contended that these cases were overruled by *Gib-
bons* v. *Hecox,* 105 Mich. 513; but that case is distinguish-

able.   Hecox was indebted to the bank upon a note which fell due a short time after the bank went into the hands of a receiver, and at the same time the bank held for collection a past-due note owned by Hecox, who was insolvent.   Subsequently Hecox assigned this note, and the receiver filed a bill to enforce a banker's lien upon it.   A demurrer to the bill was overruled upon the theory that, where a bank gives credit by discounting notes or allowing an overdraft to be made, such credit is given on the faith that moneys or securities sufficient to pay the debt will come into the possession of the bank in the course of future transactions, and that, when such securities are left with the bank for collection, a lien attaches.   It may be remarked that in that case the receiver came into possession of the debt against Hecox, and the note left by him for collection, as the representative of the bank. Had the same remained with the bank itself, unassigned, until the former became due, the lien would have attached to the latter under the uniform rule; and it would seem that in equity, at least, the same should be true, although, through insolvency of the bank, a receiver had succeeded to its assets and rights, no rights of creditors having intervened.   At the time that Hecox's note became due, the assignee's right in the note left for collection had not attached.   It was, therefore, unnecessary to find that a lien attached before the Hecox note became due.

The present case does not involve a lien, but a question of set-off, and, while there is at first blush apparent justice in the proposition that the petitioner should not be compelled to pay its debt in full while holding an obligation against the insolvent bank, there are reasons for denying it.   Our own decisions cited, which are clear and unmistakable upon this doctrine, are not unsupported, although it must be confessed that the decisions elsewhere are not harmonious.   The rights of creditors intervened at the time that the Lansing bank went into the hands of the receiver, and their equities are, by many courts, looked upon as superior to those of persons seeking to set off claims not

matured.    Had the entire fund standing to the credit of
the Lansing bank been checked out the day before its
doors were closed (as it might have been), the petitioner
would have been in no better position than any other cred-
itor; and we see no great equity in holding that the bare
accident that it was not withdrawn gave the Detroit bank
a superior equity to that of other creditors.    This subject
was considered by the court of appeals of New York in
*Fera* v. *Wickham*, 135 N. Y. 223 (17 L. R. A. 456), and
the right of set-off in such a case as this denied.    Another
learned bench that is in accord with this rule is that of
Wisconsin, which denied the right of lien and equitable
set-off in a case similar to that of *Gibbons* v. *Hecox*.    It
is distinguishable from that case, however, in the vital
particular that the rights of creditors were involved.
Among many authorities, our own case of *Lockwood* v.
*Beckwith*, *supra*, is cited, and the following quotation
shows the view taken by that court of the Michigan rule.
It says:

"There are many cases in Michigan that hold this rule,
unless some special equities other than that growing out
of insolvency should make an exception.    It is correctly
claimed that this is the rule by a great preponderance of
the authorities.    The learned counsel of the appellant
cites but few cases, and some of them hardly dispute this
rule.    The rule that places a bank, under the law, on
equality with all other creditors in such a case, seems to be
reasonable."    *Oatman* v. *Batavian Bank*, 77 Wis. 505
(20 Am. St. Rep. 136).

We are of the opinion that the question is fully covered
by the Michigan cases cited by counsel.

The order of the learned circuit judge is affirmed, with
costs.

The other Justices concurred.