MCGRAW *v.* UNION TRUST CO.

1. BANKS—INSOLVENCY—BREACH OF LEASE—CLAIMS—ALLOWANCE.
   Where the premises leased by a bank as a banking house for a
   term of years are, before the expiration of the term, vacated
   because of the insolvency of the bank and the appointment of
   a receiver, the lessors are entitled to have their claim for dam-
   ages, arising from the breach of covenant, allowed by the re-
   ceiver as a claim against the bank's estate.

2. SAME—DEMAND NOTE—SET-OFF.
   Where, on the insolvency of a bank, the lessors of its banking
   house are indebted to it on a demand note, they are not
   entitled to have their full claim for damages, arising from a
   breach of covenant in the lease, set off against the claim of
   the bank on its note.

3. SAME—DEPARTMENTS OF BANK.
   Where a bank conducted a savings and a commercial depart-
   ment in its banking house, which it held under a lease, a
   claim for damages for breach of the lease on the bank's insol-
   vency is chargeable *pro rata* against the assets of each depart-
   ment.

Appeals from Wayne; Donovan, J.   Submitted Novem-
ber 17, 1903.   (Docket Nos. 56, 57.)   Decided February
16, 1904.

Petitions by Homer McGraw and Hoyt Post, as execu-
tors and trustees of the last will and testament of Thomas
McGraw, deceased, against the Union Trust Company,
as receiver of the City Savings Bank of Detroit, for the.
allowance of certain claims against the insolvent's estate.
From decrees disallowing the claims, petitioners appeal.
Reversed.

*Wilkinson, Post & Oxtoby,* for petitioners.

*Bowen, Douglas, Whiting & Murfin,* for respondent.

MOORE, C. J.   The petitioners have two claims against

135 MICH.—39.

the respondent growing out of the same transaction, which may be considered together. The following statement of facts is necessary to an understanding of the questions involved:

The City Savings Bank failed on February 10, 1902. It occupied banking quarters in a building known as the "McGraw Building." Its lease provided for a term of five years from May 1, 1899, at a yearly rental of $3,000, payable in monthly installments of $250, due at the end of each month. The Union Trust Company, as its receiver, continued to occupy the banking office until March 31, 1902, up to which time the *pro rata* rent was paid. The keys, although tendered, were not delivered to the McGraw estate until an agreement was entered into July 8, 1902, by which it was provided that, without prejudice to the rights of either party, the receiver was to deliver up the keys, and the petitioners were to occupy the premises for the purpose of cleaning up and obtaining a tenant thereof, and re-renting the premises. No tenant was found until January 22, 1903, when the National Peat Fuel Company leased the premises on a weekly basis of $40 per week. This company occupied the premises for four weeks, paying in all $160 as rent. On February 11, 1903, the premises were rented to Alex. Y. Malcomson for a coal office for a term of four years and two months from March 1, 1903, being the balance of the term of the City Savings Bank lease and an additional term of three years, he agreeing to pay for the balance of the City Savings Bank term at the rate of $2,000 per annum in monthly installments of $166.67. As the City Savings Bank would have paid for this 14 months at the rate of $250 per month, there would thus be a deficiency of $1,166.67 during the period of the Malcomson lease. The petitioners filed claims for the difference between what was to be paid by the bank and what in fact will be received.

At the time of the failure of the bank, it held a demand note of the petitioners, given on April 8, 1901, for $3,000,

upon which interest had been paid to January 2, 1902.
The petition asked to have the note and rent offset against
each other.   The petition also asked that the claim for
rent be given priority, and, in case set-off was refused,
that the rent be paid out of the assets of the savings and
commercial departments in proportion to the amount of de-
posits in each of said departments when the bank failed.
Objection was made to the petitioners' claims on the ground
that their claim was contingent, and as such not provable
against the assets of the bank in the hands of the receiver.
The total claim of the McGraw estate included in the two
petitions, and disallowed by the court, is the sum of $3,840.

The first question is, Should the claim of petitioners be
allowed ?   It is the claim of respondent that rent which
became due after the appointment of the receiver does not
constitute a claim, within the meaning of the general bank-
ing act; citing cases.   It contends that a rent service is
not a debt, and a covenant to pay it is not a covenant to
pay a debt, but is a security for the performance of a col-
lateral act.   It is the claim of petitioners (and we quote
from brief of counsel):

"The claim of the petitioners, as presented, shows an
absolute and not a contingent liability, and constitutes a
proper claim against the assets of the City Savings Bank
in the hands of the receiver.   Their claim is for damages
sustained through the insolvency of the bank and for its
breach of covenant, and not for rent to be paid by the re-
ceiver as administration expenses.   *   *   *

"The rule appears to be that a receiver may elect
whether he will take over and assume, or discard and dis-
avow, outstanding leases of the insolvent party.   The re-
ceiver will naturally take over leased premises which
are profitable, and will also seek to surrender leases un-
profitable to the tenant, but profitable to the landlord.
For this reason the lessor is allowed to himself re-rent the
premises, and, if there is a deficiency arising out of such
re-renting, such amount is a provable claim.   The rent
maturing within the period for proving claims may also
be proved up.   The claim of the McGraw estate is made
up of both such items.   With the exception of the time
from February 10 to April 1, 1902, during which the re-

ceiver itself occupied the banking office, and paid *pro rata*, the office remained vacant until January, 1903, when the National Peat Fuel Company occupied it for four weeks, and after March 1, 1903, and for the remaining 14 months of the bank's lease, Mr. Malcomson leased the premises at a net loss to the McGraw estate of $83.33 per month. There is nothing contingent about the claim of the petitioners. Their claim is absolute. The rent accruing down to March 1, 1903, is absolute and fixed, and the loss for the remaining 14 months became fixed and absolute when the Malcomson lease was entered into."

An examination of the authorities cited shows a lack of harmony in the decisions.

The banking law (section 6145, 2 Comp. Laws) provides that the banking commissioner, upon the appointment of a receiver, shall give notice by advertisement "calling on all persons who may have claims against such bank to present the same to said receiver, and make legal proof thereof." Section 6146 provides:

"From time to time, under the direction of the commissioner of the banking department, the receiver shall make ratable dividends of the moneys realized or collected by him on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and the remainder of the proceeds, if any, after the costs and expenses of such proceedings and all debts and obligations of the bank are satisfied, shall be paid over to the stockholders of such bank, or their legal representatives, in proportion to the stock by them respectively held."

The bank had the right to make the lease when it did, and had it continued in business and abandoned the premises, and the lessor, in accordance with the terms of the lease, had re-entered and relet the premises at a loss, there could be no question but the lessor would have a remedy over against the bank. The following cases—and we think they are in accord with the weight of authorities— recognize the same right in the lessor where the premises are vacated because of the insolvency of the corporation and the appointment of a receiver: *People* v. *St. Nich-*

*olas Bank,* 151 N. Y. 592 (45 N. E. 1129); *Reading Iron Works,* 150 Pa. St. 369 (24 Atl. 617); *People* v. *National Trust Co.,* 82 N. Y. 283.   See, also, *Chemical Nat. Bank* v. *Deposit Co.,* 156 Ill. 522 (41 N. E. 225); *Bolles* v. *Drug & Chemical Co.,* 53 N. J. Eq. 614 (32 Atl. 1061).

The next question is, Are petitioners entitled to have their full claim offset against the claim of the City Savings Bank against them on the demand note for $3,000 ?   It is the claim of the petitioners that the breach of the covenants of the lease occurred because of the insolvency of the bank, and occurred upon the day it failed, thereby giving the petitioners a claim for damages, though the amount thereof did not become liquidated until the Malcomson lease was made, in February, 1903, and that the claim so arising may be offset against the claim of the bank; citing *Thompson* v. *Union Trust Co.,* 130 Mich. 508 (90 N. W. 294).   On the other hand, it is insisted this case does not sustain the petitioners' right of set-off, and that *Mechanics' Bank* v. *Stone,* 115 Mich. 648 (74 N. W. 204), *Koegel* v. *Michigan Trust Co.,* 117 Mich. 542 (76 N. W. 74), and *Henderson* v. *Michigan Trust Co.,* 123 Mich. 688 (82 N. W. 510), are conclusive against petitioners' contention.

In *Thompson* v. *Union Trust Co., supra,* it was said:

"Counsel for appellant contend that these deposits are not subject to set-off, because not mutual credits; that they are not mutual, because, at the time the bank suspended, the debt owing from petitioner to the insolvent bank was not due; that such set-off would affect the rights of other creditors, and would give petitioner a preference over them."

It was held that the deposit of Thompson was due without demand when the bank became insolvent; that the receiver stood in the place of the bank; that, as Thompson might waive the time of credit, which was for his benefit, he might avail himself of his right of set-off.   It will readily be seen that the cases are easily distinguishable.   We do not think the right of set-off can be exercised here.

The remaining question is, What department of the bank

should pay the claim? Counsel are in substantial accord upon the proposition that if the claim is to be allowed at all, and may not be set off against the claim of the bank, it should be paid proportionally out of the assets of both departments of the bank. As these departments were both conducted by the bank, it is only right they should bear the liability *pro rata* growing out of making the lease.

The decrees are reversed, and one will be entered here in accordance with this opinion.

The other Justices concurred.