## FIRST NAT. BANK OF KANSAS CITY, MO., v. SELDOMRIDGE.

(Circuit Court of Appeals, Eighth Circuit. January 18, 1921. Rehearing Denied May 19, 1921.)

No. 5550.

1. **Contracts ⟷97(1)—Right to rescind for fraud waived by treating contract as in force after discovery of fraud.**

   One induced to enter into a contract by fraud, by continuing to treat the contract as in force after discovery of the fraud, loses the right to rescind.

2. **Banks and banking ⟷186—Recognition after knowledge of fraud waiver of right to rescind discount.**

   Defendant bank discounted for a correspondent bank a note of a third person, secured by chattel mortgage indorsed by the payee bank without recourse, but personally by its president and cashier, and with a letter from the cashier authorizing defendant, on maturity of the note, to charge the same to the bank's account, which was credited with the amount of the discount. When the correspondent bank went into the hands of a receiver, before maturity of the note defendant, claiming to have discovered fraudulent representations in respect to the mortgage security, charged its account, not with the amount credited on the discount, but with the amount of the note, claiming authority under the cashier's letter. *Held*, that it thereby recognized the contract of discount, and could not disaffirm it for the fraud, when sued by the receiver to recover the balance of the correspondent's account.

3. **Banks and banking ⟷134(1)—Bank cannot apply deposit on note discounted for depositor or on which latter is not liable.**

   A bank *held* without authority to apply a deposit in payment of a note discounted for the depositor, but which the latter had indorsed without recourse.

4. **Banks and banking ⟷134(1)—Bank cannot exercise option to charge note to depositor's account after latter's insolvency.**

   A bank cannot exercise an option given it to charge the amount of a note discounted for a depositor to the latter's account at maturity, where prior to such maturity the depositor has gone into the hands of a receiver and the rights of others have intervened.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Action at law by H. H. Seldomridge, receiver of the Mercantile Bank of Pueblo against the First National Bank of Kansas City, Mo. Judgment for plaintiff, and defendant brings error. Affirmed.

R. E. Ball, of Kansas City, Mo. (I. P. Ryland, of Kansas City, Mo., on the brief), for plaintiff in error.

Alva B. Adams, of Pueblo, Colo. (Robert S. Gast, of Pueblo, Colo., and Cooper, Neel & Wright, of Kansas City, Mo., on the brief), for defendant in error.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. The receiver of the Mercantile National Bank of Pueblo, Colo., hereafter called the Pueblo Bank, recovered a judgment against the First National Bank of Kansas City, hereafter

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

called the defendant, for a balance of money the Pueblo Bank had on deposit with the defendant at the time the Pueblo Bank was closed by the Comptroller of the Currency, and this error proceeding seeks a review of that judgment. The case was tried by the court without a jury pursuant to written stipulation of the parties. Under the pleadings it was conceded that the defendant had credited to the Pueblo Bank the amount of money claimed by the plaintiff, but it was alleged that the Pueblo Bank had obtained one item of·credit by its sale to the defendant about November 23, 1914, of a promissory note which had belonged to the Pueblo Bank and which it had indorsed without recourse. This note had been signed by A. J. Monahan & Co. and was dated November 20, 1914, and was due on or before five months after date without grace, and there was delivered with it as collateral security, a prior note of Monahan & Co. executed to the Pueblo Bank, dated May 1, 1914, and due in five months, and which was also indorsed without recourse, and a chattel mortgage dated July 2, 1914, given by Monahan & Co. to the Pueblo Bank upon all of the cattle of Monahan & Co., described as 1,000 head or more and as kept on a ranch near Pueblo. This mortgage recited that it was given to secure the note of May 1.

The questions that have been discussed by counsel cover a wide range, but the facts that are deemed essential are in narrow compass. The defendant requested and was refused a finding that the evidence was insufficient to make a case for the plaintiff, and the determination of the propriety of that refusal is the only question that requires consideration. The defendant asserts that the refusal of this request was error, because under the pleadings and the evidence the defendant had proven that the credit of November 23, 1914, had been obtained by the fraud of the Pueblo Bank, and the defendant was therefore justified in repudiating the entry of credit then given. The asserted fraud is that the Pueblo Bank, when it sold the note to the defendant, fraudulently concealed the fact that the Live Stock Exchange National Bank of Chicago held a prior and superior chattel mortgage given by Monahan & Co. on the same cattle; that it fraudulently concealed the fact that the number of cattle owned by Monahan & Co. was much less than the number stated in the chattel mortgage held by defendant; that it fraudulently concealed the fact that before the defendant discounted the note practically all of the cattle had been shipped to Texas, and that a new chattel mortgage had then been given upon them in that state by a purported owner of them. It was shown that the Pueblo Bank was closed and placed in the hands of the Comptroller of the Currency on March 29, 1915, and the defendant was then informed, by one of its officers who was at Pueblo, of several suspicious facts affecting other of its loans, and that over 200 of the cattle of Monahan & Co. had died before the execution of the defendant's mortgage, and that the remainder had been sold. The defendant on that day made a debit entry charging the account of the Pueblo Bank with the amount of the Monahan & Co. note of November 20.

Assuming without deciding, that the facts show such a fraud by the Pueblo Bank as would authorize the defendant to repudiate the item

of credit given to the Pueblo Bank because of its purchase of the note, another question is presented by the record as to the right of the defendant to avail itself of this defense. When this note was first transmitted by the Pueblo Bank to the defendant, it was indorsed without recourse by the Pueblo Bank; but the defendant returned it with a request for the personal indorsements of the president and cashier of the Pueblo Bank and for instructions to charge the note to the bank's account at maturity, as had been the custom in previous dealings between these banks. The Pueblo Bank returned the note with the requested personal indorsements, and with a letter signed by the cashier which stated:

"We take pleasure in complying with your instructions, and herewith inclose the note properly indorsed. I desire to state this note, signed by A. J. Monahan & Co., $19,725.18, will be due about April 20, 1915, and this letter will be your authority to charge the account of the Mercantile National Bank with the same on that date."

The plaintiff contends that the defendant did not repudiate the purchase of the note and collateral security and its acceptance of the guaranty of the Pueblo Bank, and did not proceed as upon a rescission for the alleged fraud; but that the defendant then and ever since has affirmed the contract of purchase and the offer to allow the note to be charged against the deposit, and has asserted its cancellation of credit relying upon its ownership of the note and mortgage and the authority of the letter of the Pueblo Bank.

[1] The rules to be applied to the facts have often been stated. Grymes v. Sanders et al., 93 U. S. 55, 62, 23 L. Ed. 798:

"Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted. These remarks are peculiarly applicable to speculative property like that here in question, which is liable to large and constant fluctuations in value." Shappirio v. Goldberg, 192 U. S. 232, 242, 24 Sup. Ct. 259, 48 L. Ed. 419; Burk v. Johnson, 146 Fed. 209, 218, 76 C. C. A. 567; Richardson v. Lowe, 149 Fed. 625, 628, 631, 79 C. C. A. 317; Ripley v. Jackson Zinc & Lead Co., 221 Fed. 209, 211, 136 C. C. A. 619.

Stuart v. Hayden, 72 Fed. 402, 411, 18 C. C. A. 618, 626:

"One who is induced to make a sale or trade by the deceit of his vendee has a choice of two remedies upon his discovery of the fraud: He may affirm the contract, and sue for his damages; or he may rescind it, and sue for the property he has sold. The former remedy counts upon and affirms the validity of the transaction; the latter repudiates the transaction, and counts upon its invalidity. The two remedies are utterly inconsistent, and the choice of one rejects the other, because a sale cannot be valid and void at the same time."

Mudsill Min. Co. v. Watrous, 61 Fed. 163, 186, 9 C. C. A. 415, 437;

"When a purchaser acquires knowledge that he has been defrauded, he has an election of legal remedies. He may keep the property and sue for damages, or repudiate the contract and demand rescission. These remedies are not concurrent, but inconsistent, and the adoption of one of necessity excludes the other. The rule is well settled in equity that after knowledge of the fraud

the party must, within reasonable time, make an election as to whether he will affirm the trade, notwithstanding the fraud, or offer to restore the property and demand the return of his purchase money. If, after the knowledge of the facts which entitle him to rescind, he deal with the property as owner, it is evidence of acquiescence and an affirmance of the contract. The authorities to this point are numerous, and the principle well settled."

See A. Klipstein & Co. v. Grant, 141 Fed. 72, 72 C. C. A. 511; Roseboom v. Corbitt, 196 Fed. 627, 634, 116 C. C. A. 301; Miller v. Continental Shipbuilding Corporation (C. C. A.) 265 Fed. 158, 161; Issenhuth v. Kirkpatrick, 258 Fed. 293, 295, 169 C. C. A. 309; 2 Pom. Eq. Jur. § 897.

The election may be manifested by any conduct or declarations showing the course the party intends to pursue. One method by which a party may declare his election to affirm is by bringing suit, or by defending a suit brought against him on the theory of affirmance. Robb v. Vos, 155 U. S. 13, 43, 15 Sup. Ct. 4, 39 L. Ed. 52; Black on Rescission, §§ 590, 625.

[2] The defendant in this case when it discovered that Monahan & Co. did not have any of the mortgaged cattle, made a debit entry against the Pueblo Bank. The amount of this charge did not purport to be the amount of credit defendant had given the Pueblo Bank upon the discount of this note, with legal interest to that date, which would have been the amount it was entitled to recover or set off in case of repudiation of the contract of discount and the offer of a charge against the deposit of the Pueblo Bank, but it was the amount due on the face of the note at its maturity, and the exact amount authorized by the letter of the Pueblo Bank. The receiver of the Pueblo Bank wrote the defendant on the eleventh day after that bank had closed, inquiring as to the authority for making the charge, and on the following day the defendant replied that it had acquired the note from the Pueblo Bank indorsed without recourse by the bank, but indorsed personally by the president and cashier, and with the collateral security, and saying that the letter of transmittal gave the defendant authority to charge that note to the Pueblo Bank's account. It also said that, in addition to this, it had come into possession of facts which caused it to believe that Monahan & Co. had disposed of all the property securing the collateral note, with the connivance of the officers of the Pueblo Bank, and closed by saying that under the express authority above quoted the debits in question were made. It offered upon request to return the notes and collateral, but did not tender them until about April 22, when the receiver refused them. At some later time the defendant claimed to have learned that the cattle had been incumbered by a prior mortgage which had been transferred to the Chicago bank, but which had been paid by the Pueblo Bank before the defendant made its debit entry on March 29, 1915, and also to have later mortgage upon them there.

learned of the shipping of the cattle to Texas and of the giving of a

By its answer in this case the defendant asserted that those acts were frauds chargeable to the Pueblo Bank, but it also alleged that it debited the item in dispute because it had discounted the note on the express

agreement of the Pueblo Bank that unless paid at maturity by the makers the defendant had full power and authority to debit the account of the Pueblo Bank with the amount of the note, and again repeats that it debited the account of the Pueblo Bank "with the amount of said note, out of which defendant had been defrauded and pursuant to the written authority of said the Mercantile National Bank."

The briefs of counsel likewise justify the attempted application of the deposit upon the propositions that the credit was procured by fraud and was the application of the deposit expressly agreed to by the Pueblo Bank. These positions are clearly inconsistent, because the defendant could not repudiate the contract of sale and offer of a charge against the Pueblo Bank deposit without surrendering all rights under them. Its claim of credit for the amount of the face of the note, instead of for the credit given the Pueblo Bank, its assertion to the receiver of the grounds for its action, and its pleading and contention that it was authorized by the express authority of the Pueblo Bank to charge its account with the amount of the note, manifest its election to enforce the note and security notwithstanding its offers to return the papers and its claim of fraud inducing their acceptance of them. The offer to return the papers is equivocal, as it might express the thought that the defendant was placing the Pueblo Bank in statu quo, or the thought that the defendant had received payment according to the letter authorizing the application of deposit, and therefore was no longer entitled to the collateral note and mortgage. It did not elect to rescind, and to adhere to it without vacillation, nor did it act consistently with a purpose to pursue that course, and must be held to have waived the right to disaffirm the contract of discount.

[3] The defendant also contends that it was justified in applying the deposit of the Pueblo Bank by the terms of the notes, the chattel mortgage, and the authority given by letter from that bank. The note, to the payment of which the deposit was applied, was not due until 23 days after the application. It is the general rule that, if a depositor becomes insolvent, a bank may apply his deposit on his debt to the bank, even though it has not matured. Rolling Mill Co. v. Ore & Steel Co., 152 U. S. 596, 616, 14 Sup. Ct. 710, 38 L. Ed. 565; Schuler v. Israel, 120 U. S. 506, 510, 7 Sup. Ct. 648, 30 L. Ed. 707; Clearwater County v. Pfeffer, 236 Fed. 183, 187, 149 C. C. A. 373. But this rule is not always applied as against a mere surety or guarantor of another's debt. See Harrison v. Harrison, 118 Ind. 179, 20 N. E. 746, 4 L. R. A. 111; Mechanics' Bank of Detroit v. Stone, 115 Mich. 648, 649, 74 N. W. 204; O'Grady v. Stotts City Bank, 106 Mo. App. 366, 369, 80 S. W. 696; 7 Corp. Jur. 657.

[4] But in this case the Pueblo Bank was not indebted to the defendant upon the note, or as surety or guarantor of it, because it had indorsed it without recourse, and its only contractual liability was expressed in its letter of November 23, 1914, transmitting the note, and stating that the letter would be authority for the defendant to charge the account of the Pueblo Bank with the amount of the note on the date of its maturity, and this was but the grant of an option to the defendant. The defendant could not exercise this power prior to the

maturity of the note, and did not endeavor to do so prior to the time that the bank was placed in the hands of the Comptroller of the Currency, and thereafter it was not entitled to apply the deposit, as the rights of others had attached. Corn Exchange Nat. Bank v. Locher, 151 Fed. 764, 766, 81 C. C. A. 388; Macy v. Roedenbeck, 227 Fed. 346, 351, 142 C. C. A. 42, L. R. A. 1916C, 12.

The judgment will be affirmed.