## ROGERS v. UNITED GRAPE PRODUCTS, Inc.

### No. 772.

District Court, W. D. New York.
Jan. 3, 1933.

Wilcox & Van Allen, of Buffalo, N. Y., for petitioner.

Dudley, Stowe & Sawyer, of Buffalo, N. Y., for committee of creditors.

Slee, O'Brian, Hellings & Ulsh, of Buffalo, N. Y., for receivers.

KNIGHT, District Judge.

This controversy comes before the court on a stipulation of facts. It is agreed that the United Grape Products, Inc., leased several rooms from the Liberty Bank of Buffalo for a period of six years, commencing January 1, 1928, and another room for a period of five years and eight months, commencing April 1, 1928, and that the rent for such offices was paid from the aforesaid dates until October 1, 1931. On September 19, 1931, receivers were appointed for the corporation. Since October 1, 1931, no rent has been paid, and the receivers have not assumed the leases, although, under separate agreement with a stipulation that the rights of the parties should not be affected thereby, they occupied the offices from the 19th day of September, 1931, to the 31st day of October, 1932, and paid for such use the sum of $3,550. The bank has not released the corporation from any of its obligation under the said leases, nor has it served any notice of the election to terminate or consented to a termination of the said leases or exercised any of its privileges to terminate the leases.

The final date for filing of claims was December 1, 1931, but the time within which the Liberty Bank might file its claim was later extended to October 15, 1932. The bank has filed its claim for $34,319.98, setting forth that the consideration of the said debt is rent for rooms 913 to 927, inclusive, in the Liberty Bank building from October 1, 1931, to January 1, 1934, less the sum of $3,550 paid by the receivers for their period of occupancy. The receivers and a committee of creditors oppose the allowance of this claim.

The lease in question provides that on default or abandonment "the Landlord, at its option, shall have the right to enter * * * as the agent of the Tenant * * * to relet * * * as the agent * * * and receive the rent therefor, and to apply the same to the payment of rent due, * * * holding

the Tenant liable for any deficiency; or, at the option of the Landlord, upon any default, abandonment, * * : the term of this lease shall thereupon expire and become null and utterly void and the Landlord shall have the right * * * to re-enter ' - : and dispossess * * : and to hold the same as if the lease had not been made. The liability of the Tenant to pay rent and all other sums which the Tenant is bound * * * to pay, shall remain unaffected by any re-entry * * * by the Landlord. In case of such default or violation and re-entry, * * * the rent shall be paid up to the time of such re-entry, dispossession or cessation of the term pro rata, and thereafter, if demanded by the Landlord, the Tenant shall pay, and hereby covenants to pay * * * at the end of each month until the date hereinabove specified for the end of the full term * * * the deficiency of the net receipts * * * up to that time for rent of said premises * * * as compared with full amount receivable by the said Landlord up to that time for such rent under the provisions hereof."

Upon default in the rent reserved or abandonment of the leased premises, by the specific terms of the lease, claimant had one of two remedies at its option. It had the right to enter and relet the premises as agent of the lessee and hold the tenant liable for the difference between the rent received and the rent originally reserved; it had the alternative right to terminate the lease and take possession for its own benefit. In case of termination, the lessee remains liable to pay any deficiency, "if demanded" by the lessor. The distinction is clear. Under the first option, the lease continues; under the second, it is discontinued.

It may be said that another option arises out of operation of law. The lessor could treat the lease as continuing and sue as each default arose.

The stipulation before this court that claimant has not "exercised any of its privileges to terminate such lease" excludes consideration of the claim as based on the option for termination provided in the lease. The claim now presented is for the full amount of the rent reserved in the lease, for the entire term, less the amount paid for occupancy by the receivers. It contains no allegation of any effort to relet. It contains no allegation of the reasonable rental value of the premises during the balance of the term. It gives no basis to fix the probable actual damages.

A liability existed when the receivers were appointed. It was contingent. As to rent for the month of October, the contingent liability ripened into a claim on October 1, 1931. The same thing applies to all rent unpaid to the time when claims were required to be presented. An equity receivership is instituted to protect the assets of an insolvent and make a proportionate distribution among all creditors. Samuels v. E. F. Drew & Co. (C. C. A.) 292 F. 734. Claims must be based on a fixed liability capable of exact determination as to amount. Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640. This claim is for rent and not for damages. The amount of the liability capable of determination when all claims were to be presented was the rent due and unpaid at that time. In my opinion that is the only amount on which claimant is entitled to share pro rata with other creditors.

The reported cases dealing with comparable questions are numerous in both federal and state courts. Whether search is made of state authorities, on the theory that the question is one for local rule, or whether we search the federal cases, I do not think that any substantial support may be found for allowance of this claim as presented. Claimant seems to place reliance mainly on William Filene's Sons Co. v. Charles F. Weed et al., 245 U. S. 597, 38 S. Ct. 211, 213, 62 L. Ed. 497; Robert H. Gardiner v. Wm. S. Butler & Co., Inc., 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. 505; Leo v. Pearce Stores Co. (D. C.) 54 F.(2d) 92, 93. In Filene's Sons v. Weed, supra, sublessee agreed to pay his lessor a definite sum, "as the inducing consideration for the sublease, the right to the whole of which was earned when the sublease was made. * * * The twenty thousand dollars [consideration] a year was to be paid whether the premises were enjoyed or not, upon a personal covenant that created a present debt, with no contingency except those possibly and lawfully accelerating the time in which it was to be paid."

In Gardiner v. Butler, supra, it is said that the lease contained "a clause similar to that in the lease of Wm. Filene's Sons Co., just considered," referring to Filene's Sons Co. v. Weed, supra. The opinion states that "the claim was for rent up to the time of reentry and for damages for the later period." In each of these cases there was also claim for damages arising out of the difference between the rental value at the date of re-entry and the rent reserved. In this connection, in Filene's Sons v. Weed, the court

said: "The contract was not that all the rent for the term should become presently due, it was not for rent at all, but was a personal covenant that liquidated the damages upon a footing that was familiar and fair." Such references to these cases have been made to show that they are not authorities for allowance for the claim in question. In Leo v. Pearce Stores Co., supra, the opinion recites that the lessors "filed * * * their claims against the receivership estate for the damages alleged to have resulted from this default, on the ground that it constituted an anticipatory breach of these leases." The leases were repudiated and abandoned by the receiver, with consequent default by the defendant. The court held that the lessors were entitled to recover damages resulting from the anticipatory breach. Upon consideration of the amount which the lessor was entitled to recover (D. C.) 57 F.(2d) 340, 342, the court said: "I have * * * concluded that the rights of all parties concerned will be properly protected by an allowance to the claimant lessor of the sum * * * which will fairly compensate him for all of his damages reasonably to be anticipated as a result of the breach of this lease." It was held that the measure of damages was the difference between the agreed rent and the then rental value. The latter opinion cites numerous authorities sustaining the proposition that "the proper measure of damages presently recoverable by a lessor under a lease for years, from the lessee therein, on an abandonment constituting a breach thereof by the lessee, is the present value of the difference between the fair rental value, at the time of such breach, of the leased premises for the balance of the unexpired term and the total agreed rent. * * *"

In Pennsylvania Steel Co. v. N. Y. City Ry. Co. (C. C. A.) 198 F. 778, will be found a comprehensive discussion of rules for the determination of provable claims. This case discloses facts not parallel here, but there a claim was allowed on the basis of the value of the contract measured by prospective profits. In People v. St. Nicholas Bank, 151 N. Y. 592, 45 N. E. 1129, 1130, cited by claimant, the claim was based on the loss resulting from a reletting of the premises. The claim was allowed. The court said: "There was no question of a contingent liability, only to be ascertained to be such by the occurrence of future events. There was simply the presentation of a claim for a definite sum, as the loss which the lessor had suffered." In Harry Kottler v. New York Bargain House, Inc., 242 N. Y. 28, 150 N. E. 591, plaintiff sought to recover rent past due. There was a covenant for reletting, as agent, similar to the provision here. Claimant recovered the deficiency on the reletting. Defendant claimed that its liability was for damages which could be ascertained only at the end of the term. The Court of Appeals held that the claim there was based on rent. The court points out the distinction between continuation of the lease upon re-entry and reletting as agent for the tenant, and a reletting by a landlord after the expiration of the term. As I read this opinion, it offers no support for claimant's contention. In re Hevenor, 144 N. Y. 271, 39 N. E. 393; McCready v. Lindenborn, 172 N. Y. 400, 65 N. E. 208; Sarah R. Mann v. Ferdinand Munch Brewery, 225 N. Y. 189, 121 N. E. 746; In re Mullings Clothing Co. (C. C. A.) 238 F. 58, L. R. A. 1918A, 539; T. A. D. Jones Co. v. Winchester Repeating Arms Co. (D. C.) 55 F.(2d) 944; McGraw v. Union Trust Co., 135 Mich. 609, 98 N. W. 390; Kalkhoff v. Nelson, 60 Minn. 284, 62 N. W. 332; Hermitage Co. v. Levine, 248 N. Y. 333, 162 N. E. 97, 59 A. L. R. 1015, and the cases therein cited are authority for these assertions.

In Hall v. Gould, 13 N. Y. 127, the lease provided the right of re-entry on violation of certain conditions and authorized lessor to relet for the benefit of the lessee. The court held the lessor was entitled to recover *by way of damages* an amount equal to the rent which he had lost. It appeared that the lessor had been unable to relet the premises. The court said that the plaintiff has called the sum rent, when in point of law it was not, strictly speaking, rent.

In McCready v. Lindenborn, 172 N. Y. 400, 65 N. E. 208, 210, there were two covenants—one which provided for re-entry and a reletting as agent if the premises became vacant and also provided for the application of rent received and for deficiency; and the second covenant provided that on default in the payment of rent or performance of any of the covenants at the option of the first party the lease should cease and determine and he would pay as damages for the breach of the covenant the difference between the amount of rent which should be collected and received or might with due diligence be collected, during the residue of the term remaining unexpired, "as the amount of such difference shall from time to time be ascertained." The lease was made October 9, 1893, for term from October 1, 1894, till April, 1904. Action was brought prior to expiration of the term and judgment sought for total rent for the term. It will appear that these cove-

nants contemplate possession after re-entry as agent and possession after termination of the lease. The court held that the plaintiff was entitled to no damages except such as had accrued and were due and payable at the time the action was commenced. The court said: "We do not sustain the theory upon which the majority of the learned judges * * * proceeded to judgment, to wit, that an action would lie for the breach of the lease as an entirety, and the recovery of all the damages in a single action brought before the expiration of the term. The breach of an agreement to pay money in installments is not a breach of the entire contract, and will not permit a recovery of all the damages in advance,"—citing Wharton & Co. v. Winch, 140 N. Y. 287, 35 N. E. 589; Moore v. Taylor, 42 Hun (N. Y.) 45. It seems to me that this presents the same question as in the claim at bar.

In Michaels v. Fishel, 169 N. Y. 381, 62 N. E. 425, 426, the lease provided for re-entry and repossession on default in payment of rent, and by an independent paragraph provided that the lessors at their option might relet and apply the rent then received. Rental was for seven years, and rent was payable monthly in advance. Say the court, "By the entry for condition broken the estate of the lessee was at an end, and the lessor was in of his former estate. Rent, as such, could, therefore, no longer accrue to the lessor from the lessee." Here the question was whether the means by which re-entry was procured came within the covenant which was protected by indemnity.

In Kottler v. New York Bargain House, Inc., supra, lessor re-entered under a covenant which provided for re-entry and reletting. It was held that rent to the time of surrender only could be recovered.

■ These rules of law applicable here are laid down in the foregoing cases: That the rights of the parties are determined by the particular language of the covenant; that, where the covenant provides for re-entry and reletting, as agent of lessee, and payments resulting from such covenant are to be made at definite periods within the terms of the lease, rent thereunder shall be recovered only at the expiration of such periods; that liability for damages resulting from such reletting is to be ascertained at the end of the term, in the absence of a provision in the covenant providing for periodic payments of deficiency; that claim for deficiency where the covenant provides for periodic payments within the term of the lease is not for damage, but for rent; that, where the covenant does not provide for payment of a difference in rent received at specific periods during the term of the lease, the claim is for damages and not for rent; that, on termination of the lease, upon default or abandonment of the property, and where the covenant provides that the lessee shall pay the deficiency at the end of each specified period, the relation of landlord and tenant ceases, and the landlord can recover the deficiency when each of such periods runs.

The lease provides under the covenant for reletting that the landlord may "relet the said premises as the agent of the tenant and receive the rent therefor and to apply the same for the payment of the rent due by these presents holding the tenant liable for any deficiency." The lease also provides for payment of the rent in equal monthly installments.

■ Under the rules laid down in the above-cited cases, claimant can recover only to the time fixed for the presentation of claims. Though the time was extended for the presentation of the claim in question, such extension was granted as a favor to claimant and in the discretion of the court. It cannot be utilized to increase the amount of claimant's claim to the loss to the other creditors. I therefore find and decide that the claim herein be allowed at $3,710, being the amount of rent reserved for October, November, and December, 1931, less $900 paid by the receivers on account of their occupancy, or the sum of $2,810.