## WALKER v. PIKE COUNTY LAND CO.

(Circuit Court of Appeals, Eighth Circuit. June 15, 1905.)

No. 2,036.

FRAUDULENT REPRESENTATIONS—PERSONS IN FIDUCIARY RELATION—JOINT PURCHASERS OF LAND.

An agent for the sale of a tract of land, who joined with others in purchasing the same for speculative purposes, under an agreement that a corporation should be formed for convenience in holding the title and

139 F.—39

making conveyances, stood in a fiduciary relationship to his associates in the purchase, and was bound to the utmost good faith toward them; and where he misrepresented to them the price paid, and thereby obtained a secret profit on the sale, the corporation, of which he and such associates are the sole stockholders, may maintain a suit to require him to account to it for such profit.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

In the month of February, 1902, and for several months previous, the defendant, Walker, a real estate agent residing at Louisiana, Mo., held an option from the Block Land & Farming Company for the sale of a large tract of land owned by it, situated in Pike county, Mo., for the net price to the company of $67,500. Early in February, through a subagent by the name of Sawyer, he was brought into communication with C. C. Weber, E. L. Carpenter, F. H. Carpenter, and E. P. Welles, of Minneapolis, Minn., as possible purchasers of the property. Soon thereafter defendant visited Minneapolis and carried on the negotiations in person. He represented to these parties that the lowest price for which the owner would sell the property was $80,000, that he had an option on the property at that price which would expire March 1st, and for that reason he was very anxious to close the deal. In response to specific inquiries he repeatedly asserted that the $80,000 did not include any commission or compensation to himself in any form. As evidence of his entire good faith, he also offered to join with the parties named, in the purchase of the property and contribute $10,000, or one-eighth of the purchase price. It was mutually understood that the land, if purchased, would be bought for speculation, and defendant agreed to look after the same until it was resold without any charge, but he was to be given the agency for the resale of the property on a commission of 5 per cent. As a part of these negotiations it was contemplated by all the parties that a corporation should be organized for the convenient holding and transfer of the title to the property. As a result of defendant's representations the Minneapolis parties sent an expert to examine the land, and a short time thereafter Messrs. Weber and Carpenter personally inspected it. On the 15th of February one memorandum was signed on behalf of the purchasers by Messrs. Weber and Carpenter, and on behalf of the Block Land & Farming Company by the defendant, Walker, for the purchase of the property at the price of $80,000. Another memorandum was signed by Walker, whereby he agreed to invest $10,000 in the stock of the corporation that should be formed, and also providing for his agency as above mentioned. Up to this time the defendant's agreement with the Block Land & Farming Company had rested in parol. He now obtained from it by correspondence a written option at the net price to him of $67,500. On receipt of this he wrote to the president of the company as follows, under date of February 21st:

"I have your agreement this a. m., and I believe I can put deal through, but what I want is consideration of sale $80,000, so that I can show it to the purchasers. Then we can have our private arrangement as to what you are to pay me, which is none of their concern. I cannot show them your letter as it is, because they would think I was getting too much out of it and would make a big kick. So please send me an exact copy of the letter I received this a. m., with the exception of the consideration, and make that consideration $80,000, and accompany it with another letter saying, if I sell it at $80,000 net, you will pay me $12,500 commission. In that shape I can handle it; otherwise, I am handicapped to such an extent that I can do nothing."

The completion of the sale was now delayed by an attempt on the part of Walker to get the company to reduce its price to him to $60,000. As a result of this delay the Minneapolis parties called upon Walker to submit to their attorneys his authority as agent and all his correspondence with the company. To meet this emergency he again wrote the company, urgently asking for the documents in accordance with his letter above copied, stating: "Unless I can get such an agreement as I wrote you about, I cannot see how I can make a sale. I have just received a letter saying an attorney will be here Monday to go into titles and are dead sure to ask for contract of sale

from you, and I cannot show him the one I have. You know just what I want and just what I will have to have in order to do business." In reply to this the company furnished Walker the desired documents which enabled him to carry out his deception. The sale was made for $80,000. The property was temporarily deeded to Mr. Carpenter pending the organization of the holding company. Out of the $80,000, the Block Land & Farming Company paid to defendant $12,500. Immediately thereafter the defendant joined with the Minneapolis parties in the organization of the plaintiff company under the laws of Minnesota. They and he were its only stockholders, and were all members of its board of directors. As soon as the plaintiff was organized it took over the title to the property. As a result of litigation between the defendant and his subagent, Sawyer, the plaintiff first learned in July, 1902, of defendant's deception, and promptly instituted this suit to compel him to account to it for the $12,500. The trial court, after allowing credit for the payments made by defendant to his subagent, gave judgment in favor of the plaintiff for $9,000. The present appeal seeks a review of that decree.

Eugene Pearson and F. L. Schofield (Ras Pearson, on the brief), for appellant.

W. A. Lancaster (Lancaster & McGee, Ball & Sparrow, and F. H. Carpenter, on the brief), for appellee.

Before VAN DEVANTER and HOOK, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge, after stating the case as above, delivered the opinion of the court.

It would be a reproach to the law if the rule determinative of the rights of the parties upon the foregoing facts were uncertain. Fortunately the situations are few in which one party to a business transaction can deliberately lie to the other with legal impunity. Appellant rests his defense upon the ground that statements as to the price paid or offered for property are not material, and, though false, are not fraudulent; but this doctrine, even in those courts which sustain it, is confined to transactions between vendor and purchaser when standing at arm's length. The defendant saw fit to put off that character in his dealings with the Minneapolis parties and unite himself with them as purchaser. As a joint purchaser he stood in a fiduciary relationship to his associates, and was bound to the utmost good faith in his dealings with them. The law demanded of him, not only that he should not be guilty of positive fraud, but that he should not conceal from them any fact material to the transaction. Any profit which he secured by violating this legal duty he was bound to account for to them. Hinton v. Ring, 111 Ill. App. 369; Pendergast v. Reed, 29 Md. 398, 96 Am. Dec. 539; Banta v. Palmer, 47 Ill. 99; Hauk v. Brownell, 120 Ill. 161, 11 N. E. 416; Page v. Parker, 43 N. H. 363, 80 Am. Dec. 172; Yeoman v. Lasley, 40 Ohio St. 190; Willink v. Vanderveer, 1 Barb. 599; King v. Wise, 43 Cal. 628; Barry v. Bennett, 45 Cal. 80; Davenport v. Buchanan, 6 S. D. 376, 61 N. W. 47; Beare v. Wright, 13 N. D. ——, 103 N. W. 632.

We do not find it necessary to pass upon the question to which counsel for defendant has devoted much attention in his brief, whether the defendant was technically a promoter of the corporation or not. The corporation was in contemplation at the time the ne-

gotiations were had, and it was understood by all parties that the property was being acquired to be held in that manner. It was not a trading corporation organized for permanent purposes. It was never contemplated that its stock should be placed on the market. In fact, the corporation is simply a convenient business form in which the purchasers of the property combined. Under these circumstances the plaintiff has the same right to call the defendant to account which his associates would have possessed if the corporation had not been organized.

The decree is affirmed.

NOTE.—The following is the opinion of Adams, District Judge, in the court below:

· ADAMS, District Judge. This action was instituted to require the defendant to account to the complainant for the sum of $12,500, alleged to be due to the complainant, by reason of the facts to which attention will now briefly be called. In the early part of the year 1902, the evidence shows that the defendant represented to one Weber and E. L. Carpenter, that he had the right to sell a certain large tract of land, situate near Louisiana, Mo., belonging to the Block Land & Farming Company, for the sum of $80,000, and that he was willing to go in with them (Weber, Carpenter, and their associates), and become the joint purchaser with them of such land to the extent of one-eighth interest therein; that he was so confident of the ultimate outcome of the venture that he was willing to put his own money into it to that extent, without taking any commission or personal compensation for his services in bringing about the sale. He represented, and gave Weber and Carpenter to understand, that $80,000 was the lowest price for which the property could be purchased, and affirmatively assured them that at that price he would get no commission whatsoever. Defendant and Weber and Carpenter, during the negotiations for the purchase of the land, all understood and intended that a corporation should be organized to ultimately take title to the land, and to dispose of it for the benefit of the parties interested. Subsequently the land was purchased for $80,000, net, and by agreement title was taken temporarily in the name of E. L. Carpenter. Very soon thereafter a corporation was organized under the laws of the state of Minnesota; Weber and Carpenter and their friends in Minneapolis taking all the stock except 62 shares, which were subscribed and paid for by defendant Walker. After the purchase of the land had been accomplished, Walker requested the others to permit him to subscribe for one-sixteenth of the stock, instead of one-eighth, or to take $5,000 interest, instead of $10,000, which he had agreed to take before the land was purchased. This fact explains why he subscribed for only 62 shares.

It is quite immaterial, in my opinion, to critically distinguish between an option and an agency in the determination of defendant's relation to the Block Land & Farming Company. The big fact is that defendant represented to Weber and Carpenter that he had the control of the situation, and could get the land for $80,000 and no less. Weber and Carpenter believed him and acted upon what he said. There is no doubt, however, that in the inception of the trade defendant represented to them that he had an option which would expire March 1, 1902, and I think they acted upon this representation throughout the negotiations. This fact was strenuously urged by the defendant to induce the others to close the contract of purchase prior to March 1, 1902. There is no doubt in my mind that defendant represented to Weber and Carpenter that he was getting no commission for making the sale; that $80,000 was the net actual cost of the land; that he was so confident of the wisdom of making the purchase at that price that he was willing to go in with them and take one-eighth interest in the venture, with the right to act as selling agent for the concern to be organized to take title to the land. These representations are obviously very persuasive, and were made to induce Weber and Carpenter to join with the defendant in the purchase of the property, and in my opinion were made by the defendant, knowing that it was the intention to form

a corporation to ultimately take title to the property. I have no hesitancy in finding from the evidence that the defendant, together with Weber and Carpenter, became and were promoters of the enterprise of organizing a corporation for the purpose of taking title to the land in question; Weber and Carpenter and their friends to take seven-eighths of the capital stock, and Walker to take one-eighth thereof. The subsequent formation of such corporation by them, each becoming a stockholder and director therein, and the vestiture of such corporation with title to the land in question, throw light, if any were needed, on all their prior conduct. But the whole matter is conclusively settled by the two instruments of writing, each bearing date February 15, 1902; one signed by Weber, Carpenter, and Walker, and the other signed by Walker only. The first purports to be a written memorandum of the sale by Walker, as agent for the Block Land & Farming Company, of the land in question to Weber and Carpenter. The second modifies the first and establishes Walker's true relation to the other parties. It reads thus:

"Messrs. E. L. Carpenter & C. C. Weber, Minneapolis, Minn.—Dear Sirs: In consideration of your agreeing to purchase the property known as the lands of the Block Land & Farming Co., in accordance with the memorandum of agreement entered into between us to-day, I agree as follows, in case the sale of the said property is completed, and you acquire title to the same: First. To invest in cash in a corporation that you will form for the purpose of handling said property ten thousand dollars ($10,000) in cash upon demand, said corporation to acquire the property from you at cost to you. The said corporation to be formed within a reasonable time after you acquire title. Second. To enter into a contract with the said corporation to offer for sale, and to use my best efforts to sell portions of the said lands for farming purposes," etc.

Can there be any doubt, taking these two papers together, that they fully corroborate the testimony of complainant in regard to defendant joining them in the organization of a corporation to handle the property in question? Some comment was made in argument upon particular words employed in the paper signed by Walker, but the general purpose of the paper is entirely consistent with the contention of the complainants as to what occurred during all prior negotiations, namely, that it was at all the times contemplated that the purchase was made for a corporation to be organized, in which all the parties would be interested according to the several amounts which they might agree upon as between themselves. The foregoing seems to me to show conclusively that the defendant occupied the position of trust and confidence toward the corporation contemplated to be formed. He was, together with the other persons interested in the negotiations with him, a promoter, in the truest sense of the term, of the corporation to be formed. Such being the case, the rule "uberrima fides" became his rule of conduct. Does his conduct square with this rule? Clearly not. During all the negotiations, while he was pretending to act without any commission, claiming that the project in hand was so meritorious that he desired to become interested in it to the extent of one-eighth interest on an equal footing with the others, he had a secret agreement with the owner of the land for a commission of $12,500. In other words, occupying the trust relation already disclosed, he was continually representing by speech and by letter that the owner of the land would take nothing less than $80,000 for the same, when he knew and had a private agreement with the owner to the effect that it would take $67,500, and when he knew and intended to secure a personal advantage in the transaction to the amount of $12,500. Defendant's bad faith in this matter is clearly shown by his correspondence with the Block Land & Farming Company, wherein, after that company had given him a writing to the effect that he had an option to sell the land for $67,500, he returned the same to the owner, saying that that would not do, that he could not show such a letter to his contemplated purchaser, and afterwards securing a letter giving him the option to sell at $80,000, and making use of that letter by way of assurance to Weber and Carpenter that the land would cost them the full amount of $80,000. This was clear deception on his part, and does not square at all with the rule of conduct which the law required him to observe in such case. In my opinion defendant must be made to account to

the complainant corporation for all that he surreptitiously acquired. He holds that money in trust for complainant.

Complainant's counsel consented in argument to allow defendant the sum of $3,500, which he claimed to have paid out to one Sawyer, and for other expenses in bringing about the sale. The decree will therefore be in favor of the complainant, requiring defendant to pay complainant within a time to be fixed the sum of $9,000, and in default of such payment that execution shall issue therefor. The decree may also fix a lien upon the stock held by defendant in complainant corporation for the amount just mentioned. Counsel may prepare a form of decree and submit it to the court.

The following is the decree of the Circuit Court:

"This cause coming on to be further heard at this term of the court, was argued by counsel; and thereupon, upon consideration thereof, and by reason of the law and the findings of the court, it is hereby ordered, adjudged, and decreed that the complainant have and recover of and from the defendant the sum of nine thousand dollars ($9,000.00), with interest thereon at the rate of six per cent. per annum from the date hereof, until paid, together with all costs and disbursements incurred in this action, and that this judgment shall be and constitute a first lien for the amount hereof on thirty (30) shares of the capital stock of the complainant corporation owned by defendant, now in the possession of complainant. It is further ordered, adjudged, and decreed that unless the said defendant pay to said complainant said sum of nine thousand dollars ($9,000.00), so adjudged and decreed to be due complainant as aforesaid, with interest thereon at the rate and from the date aforesaid, together with all costs and disbursements by it laid out and expended, on or before the 22d day of December, 1903, execution shall forthwith issue against him, the said defendant, for said sum."