## BLANK v. ARONSON.

(Circuit Court of Appeals, Eighth Circuit. April 19, 1911.)

No. 3,350.

1. PRINCIPAL AND AGENT (§ 69*)—EXECUTION OF AGENCY—AGENT TO SELL SELLING TO HIMSELF.

An agent cannot purchase for himself that which his duty requires him to sell for his principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 130–145; Dec. Dig. § 69.*]

2. APPEAL AND ERROR (§ 1009*)—REVIEW—FINDINGS IN EQUITY SUIT.

It is the settled law of the federal courts that, where a chancellor has made his findings of fact and decree on conflicting evidence, they will be treated as presumptively correct by an appellate court, and will not be disturbed, unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3972; Dec. Dig. § 1009.*]

3. CONTRACTS (§ 270*)—RESCISSION FOR FRAUD—TIME FOR RESCISSION.

One entitled to rescind a contract on the ground of fraud must announce his purpose to do so promptly, unconditionally, and unevasively, upon the discovery of the fraud practiced upon him.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1189, 1200; Dec. Dig. § 270.*]

4. CANCELLATION OF INSTRUMENTS (§ 34*)—SUIT FOR CANCELLATION—LACHES.

A suit for cancellation of a deed on the ground of fraud, brought within a year after complainant's rescission of the contract, is not subject to the defense of laches.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 49–54; Dec. Dig. § 34.*]

5. CANCELLATION OF INSTRUMENTS (§ 59*)—SUIT FOR CANCELLATION OF DEED —CONDITIONS TO GRANTING OF RELIEF—VALUE OF IMPROVEMENTS MADE BY DEFENDANT.

An agent for the sale of land, who by actual false representations induced his principal to sell the land to a third person, with whom he was secretly interested, and who afterwards obtained a conveyance of the land to himself before the grantor had knowledge of the fraud, on a rescission and cancellation of the deed by a court of equity, is not entitled to payment for improvements made by him, although he is charged with the rental value of the land while in his possession.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 119–125; Dec. Dig. § 59.*]

Appeal from the Circuit Court of the United States for the District of North Dakota.

Suit in equity by Harrison Aronson against Samuel Blank. Decree for complainant, and defendant appeals. Affirmed.

Edward Engerud and Lee Combs (Holt & Frame, on the brief), for appellant.

Arthur W. Fowler (W. S. Stambaugh and W. H. Oppenheimer, on the brief), for appellee.

Before SANBORN and ADAMS, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

ADAMS, Circuit Judge. Aronson employed Blank to find a purchaser for a tract of land owned by him in Barnes county, N. D. Blank entered upon the task, and produced Elmer W. Fish as a proposed purchaser at the price, which he represented to be all he could get, of $14 per acre. On December 3, 1906, a contract of sale was made between Aronson and Fish for that price, by the terms of which Fish agreed to pay $2,300 in cash, $2,000 more on or before November 1, 1907, when the deed was to be made, and to give his notes, secured by mortgage on the premises, for the balance, which was to mature from time to time thereafter. On November 1, 1907, Blank appeared to be the assignee of Fish's right to purchase, and upon representations to that effect the deed was made to him by Aronson.

The object of this suit, instituted by Aronson in the court below, was to annul that deed on the ground that Blank, while acting ostensibly as his agent and confidential adviser, had a personal interest in the purchase and concealed the same from him. The trial court found for the complainant, and entered a decree ordering a reconveyance of the property to complainant, on condition that he return to defendant the consideration received by him and certain sums paid by defendant for taxes and interest on prior mortgages. From this decree, defendant appealed.

[1] If the charge found in the bill is sustained by the proof, the sale ought to be annulled. There is no principle of law, equity, or morals more universally recognized than this: That an agent must be faithful to his principal in the discharge of the duty which he undertakes. He cannot purchase for himself that which his duty requires him to sell for his principal. "Emptor emit quam minimo potest, venditor vendit quam maximo potest." His own interest is a constantly acting force inducing him to unfaithfulness in the discharge of the duty undertaken by him. As said by the Supreme Court of the United States in Michoud v. Girod, 4 How. 503, 554, 11 L. Ed. 1076:

"The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. * * * It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another."

These salutary principles have been repeatedly laid down and enforced by this court. See Walker v. Pike County Land Co., 71 C. C. A. 593, 139 Fed. 609; Mastin v. Noble, 85 C. C. A. 98, 157 Fed. 506, 509; Files v. Rankin, 82 C. C. A. 491, 153 Fed. 537; Babcock v. De Mott, 88 C. C. A. 64, 160 Fed. 882; Cunningham v. Pettigrew, 94 C. C. A. 457, 169 Fed. 335.

The evidence, consisting of oral testimony, letters, and other written documents, was heard in open court by the learned trial judge. He had all the witnesses before him, and observed their demeanor in the trying ordeals of examination and cross-examination, and after hearing arguments of counsel thereon made the following concise findings of fact:

"That on or about the 15th day of August, 1906, the complainant and defendant entered into an oral agreement whereby the defendant, for a valuable consideration, agreed to act as the agent of the complainant in procuring

a purchaser for the above-described land, and in assisting and acting as agent of complainant in closing up and completing the sale of the same with the purchaser so to be obtained.

"That in the course of such agency and employment, and on or about the 3d day of December, 1906, the defendant presented to complainant one Elmer W. Fish as a purchaser for said land, at the agreed price of $14 per acre, and then and there falsely and fraudulently stated and represented to complainant, and led complainant to believe and understand, that said real estate was being purchased solely for and by said Elmer W. Fish, and for his exclusive use and benefit; whereas, in truth and in fact, the defendant had secretly agreed with said Fish that he, said defendant, should have an equal undivided one-half interest in said property, and the contract to be entered into by said Fish with complainant for the purchase thereof. That said Fish was fully aware of said fraudulent scheme, and participated therein with the defendant. That relying upon the aforesaid statements and representations of the defendant that said Fish was purchasing said property for himself alone, and believing the same to be true, complainant entered into a written contract on said 3d day of December, 1906, with said Elmer W. Fish, whereby said Fish agreed to buy, and this defendant agreed to sell to him, the real estate above described, and the whole thereof, at the agreed price of $14 per acre, all as alleged and set forth in the complaint herein.

"That on or about the 20th day of December, 1906, said Fish died intestate, and that thereafter, and on or about the 25th day of July, 1907, the defendant procured from the heirs of said Fish a quitclaim deed, whereby they jointly and severally did grant, bargain, sell, release, and quitclaim to him, his heirs and assigns, forever, all their right, title, and interest in and to the real estate above described. That said quitclaim deed upon its face did not show the exact interest which said grantors as heirs at law of said Fish had in the real estate above described.

"That on or about the 22d day of October, 1907, the defendant falsely and fraudulently stated and represented to complainant that he had acquired from the heirs at law and next of kin of said Elmer W. Fish, deceased, all their right, title, and interest in and to said contract of purchase, and the lands covered thereby, and falsely and fraudulently stated and represented that the interest which said deceased had in said contract of purchase, and the lands covered thereby, and which defendant acquired from the heirs at law and next of kin of said deceased, as aforesaid, was the entire and exclusive interest in and to said contract of sale and in and to the lands covered thereby, and falsely and fraudulently represented that he, said defendant, was by reason of the purchase by him from said heirs at law and next of kin of said deceased, as aforesaid, the owner of the entire and exclusive interest in said contract of sale, and the lands covered thereby, and entitled to a conveyance from the complainant of all of said real estate, pursuant to the terms of said contract. That relying upon said statements and said representations so made by the defendant, and believing them to be true, and without any knowledge to the contrary, or that the defendant had from the beginning been jointly interested in the purchase of said lands with said Fish, the complainant on the 29th day of October, 1907, made, executed, and delivered to defendant a certain special warranty deed, whereby he did, in consideration of the sum of $14,258, grant, bargain, sell, and convey to said defendant all of said real estate.

"That as a part of said consideration of $14,258, named in said special warranty deed, defendant and his wife made, executed, and delivered to complainant their three promissory notes, bearing date October 29, 1907, and due as follows: One note for $2,000, due on or before November 1, 1908; one note for $1,000, due on or before November 1, 1909; and one note for $2,000, due on or before November 1, 1910, all of which said notes were secured by mortgage upon all of said real estate above described.

"That complainant did not discover the fraud of defendant and of said Elmer W. Fish until after the execution of said deed for said land, and that upon discovering the same he promptly demanded a rescission of said transaction, and a reconveyance of said property to him, and offered to restore to the defendant all payments made upon the purchase price of said

land, and everything of value received by complainant under said contract, all of which was refused by the defendant.

"That the defendant has been in the possession of said land since the execution of said contract, and in the enjoyment of the rents, issues, and profits of the same. That the reasonable value of the use of said land during the period that defendant had been so in possession of the same is the sum of $3,000.

"That there has been paid to complainant under said contract, the following sums, to wit: On the 5th day of December, 1906, $2,300; on the 29th day of October, 1907, $2,659.50. That defendant has paid upon prior liens, existing upon said property at the time of the execution and delivery of said contract, the following sums, to wit: On a mortgage to Henry A. Barnes, interest from November 1, 1907, to February 1, 1909, $150; on a mortgage to Roxana B. Curtis, interest to November 15, 1908, $60; on a mortgage to Alice R. Rodgers, interest to December 20, 1908, $78; on a mortgage to Louisa Miller, interest from November 1, 1907, to March 1, 1909, $80. That defendant has also paid as taxes duly levied and assessed upon said land since the execution of said contract the sum of $362.90— making the total sum of $5,690.40.

"That complainant's taxable costs in this suit, as stipulated by the parties, are $293.66.

"That while the defendant has been in the possession of said real property he has erected buildings thereon of a permanent and substantial character, which cost and are of the fair and reasonable value of $2,526. That he has constructed fences thereon, which are of the fair and reasonable value of $296. That he has broken 125 acres of said land, and removed the stone therefrom, and that the reasonable value of such improvement is the sum of $625."

The conclusions of law were then stated by him as follows:

"That said contract for the purchase and sale of said land, and said deed bearing date October 29, 1907, were obtained by the fraud and misrepresentation of the defendant, and that the same are, and each of them is absolutely null and void, and that a decree should be entered herein so declaring, and also adjudging and decreeing that the defendant, upon compliance by complainant with the terms of this decree, execute and deliver to the complainant a good and sufficient special warranty deed conveying to complainant the real property above described, free and clear of all liens and incumbrances made or suffered by said defendant.

"That as a condition of the reconveyance of said property as herein provided the complainant return to the defendant the notes above described, and deliver to him a release of and from all liability under any of the covenants of the mortgage given to secure said notes. That complainant further pay to the defendant the sum of $2,396.74, being the amount of the payments made upon said contract, together with the amount paid by defendant as interest upon prior mortgages upon said land, and for taxes thereon, as stated in the findings of fact herein, less the sum of $3,000, the value of the use of said real property during the time that defendant has been in possession thereof, and complainant's taxable costs herein, amounting to $293.66. That complainant make said payment within 30 days from the date hereof, and that, immediately upon the payment of such sum to defendant by complainant, the defendant execute and deliver to complainant the deed of said property as hereinbefore provided.

"That the actual fraud of the defendant, as above found, precludes the court from granting him any relief in respect of the improvements which he has made upon said land while the same has been in his possession."

[2] It is the settled law of this court that, where a chancellor has considered conflicting evidence and made his findings of fact and decree thereon, they will be treated as presumptively correct, and will not be disturbed, unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consid-

eration of the evidence. Thallmann v. Thomas, 49 C. C. A. 317, 111 Fed. 277.

In view of the earnest contention of counsel for defendant that such error and mistake appear by this record, we have carefully and patiently considered it, and find ourselves unable to discover it. We think there was abundant evidence sustaining the findings in every particular, and certainly the record discloses no obvious misapplication of the law or serious misapprehension of the facts. We shall therefore attempt no analysis of the proof or demonstration of its preponderance in favor of complainant. That would be of no service to either party.

On these findings it is clear that defendant, while acting as the paid agent of complainant to serve him faithfully in finding a purchaser for his land, had a secret agreement or understanding with Fish, with whom he negotiated the sale, and who ostensibly became the purchaser, that he, the defendant, should have a substantial interest in the trade. This, under the authorities cited, entitled complainant to rescind the sale, and to a restoration of the title upon complying with the established rule in equity to place the defendant in statu quo. This was done by conditioning the relief awarded to complainant upon his making restitution to defendant of what he had received from him.

[3] But it is contended that complainant did not promptly and unevasively rescind the sale after being advised of defendant's fraud. The well-settled rule on this subject is that one entitled to rescind a contract on the ground of fraud must announce his purpose to do so promptly, unconditionally, and unevasively upon the discovery of the fraud practiced upon him. Richardson v. Lowe, 79 C. C. A. 317, 149 Fed. 625; Cunningham v. Pettigrew, supra, and cases cited.

The learned trial judge in his eighth finding of fact found distinctly this to have been done. There was much conflict in the evidence on this point—some tending to show that complainant knew of defendant's interest in the purchase some time before he executed the deed to him on October 29, 1907; but there is also substantial evidence to the contrary. Complainant testified that he learned for the first time on October 29, 1907, after the deed had been executed and delivered to defendant, that the latter had an interest in the purchase; that, on being then for the first time informed of the true facts of the case, he charged defendant with perfidy and demanded a return of the title, offering to give him back the money, notes, and other valuable things received by him; that defendant answered him saying:

"I will prove to you that I did not have any interest in it; that I only loaned Fish the money, and I won't do anything of the kind."

On this and other evidence of like character found in the record, we think the trial court was well warranted in its finding that the fraud was not discovered until after the deed was made, and that an unequivocal announcement was then made of the purpose to rescind by complainant.

[4] This suit was instituted in less than one year after the rescission was made, and this satisfies the strictest requirement of diligence in the assertion of complainant's right. Cunningham v. Pettigrew, supra.

[5] The Circuit Court allowed complainant·the value of the use of the land in question during the time defendant was in possession, and refused to allow defendant any credit for work and labor done or improvements made upon the premises during that time. Of this refusal the defendant complains.

The findings of fact disclose that defendant made false statements and representations to induce complainant to believe that Fish was the actual purchaser, and that he, the defendant, had no interest in the trade. This, in our opinion, was a false representation of a material matter, designed to aid the defendant and to influence complainant to his injury. This was actual fraud. Its inevitable tendency was to destroy defendant's competency to act as a true and faithful agent of complainant in the discharge of the duty he was employed to perform; and the proof tends to show that a most natural consequence followed—that the land ,was sold for considerably less than its actual value. It is very generally recognized that one who makes valuable improvements upon lands which he claims to have acquired in good faith may, upon an adjudication adverse to his title, be credited with the reasonable value of improvements made by him while in possession. This is a manifest equity. But when one, as a result of deception perpetrated by him upon the owner, secures a conveyance, which is subsequently annulled for fraud, there is manifestly no equity in his claim for improvements.

No implied promise on the part of the owner to pay for them would arise. He might not have desired such improvements, or, if he had, he might not have been willing to incur the expense of making them. No principle of law would compel him to pay a volunteer for making them against his will. But whether equity should condition affirmative relief against a vendee in possession by imposing the obligation upon the owner to pay for such improvements is another matter.

The controlling fact in determining whether this should be done is whether the improvements were made by him in good faith, believing himself to be the real owner, or whether they were made by him in bad faith, in pursuance of a fraudulent scheme to circumvent the owner. In cases of the latter kind, according to the great weight of authority, a fraudulent grantee is not entitled to reimbursement for such improvements. Railroad Company v. Soutter, 13 Wall. 517, 20 L. Ed. 543; Jackson v. Ludeling, 99 U. S. 513, 25 L. Ed. 460; Lynch v. Burt, 67 C. C. A. 305, 132 Fed. 417; German Savings & Loan Soc. v. Tull, 69 C. C. A. 1, 136 Fed. 1; Morrison v. Robinson, 31 Pa. 456; Van Horne v. Fonda, 5 Johns. Ch. (N. Y.) 388, 415; Goble v. O'Connor, 43 Neb. 49, 61 N. W. 131; Hawley v. Tesch, 72 Wis. 299, 39 N. W. 483; Guckenheimer v. Angevine, 81 N. Y. 394.

The refusal of the trial court to open up the case, after its final submission, for the introduction of further evidence, was not assignable for error, unless the refusal amounted to abuse of judicial discretion.

Discovering nothing of that kind, and finding no error in the record, the decree of the Circuit Court is affirmed.