RIPLEY et al. v. JACKSON ZINC & LEAD CO.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1915.)

No. 4064.

1. SALES ☞38—FRAUD—BRIBING OR CORRUPTING BUYER'S AGENT.

A contract of sale, brought about by bribing or corrupting the buyer's agent, may be rescinded by the buyer.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 65–77, 85; Dec. Dig. ☞38.]

2. CONTRACTS ☞270—RESCISSION—TIME FOR RESCISSION.

A party entitled to rescind a contract for fraud must announce his purpose to rescind promptly and unequivocally upon the discovery of the fraud.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1189, 1200; Dec. Dig. ☞270.]

3. SALES ☞126—RESCISSION—TIME FOR RESCISSION.

The president, directors, and a large number of stockholders of a company, induced to buy a mill and mining machinery by bribing or corrupting its agent, learned of the fraud as early as April 7th or 8th, when in the city where the perpetrators of the fraud resided, but, instead of announcing their intention to rescind, they returned to their homes and took the matter under advisement. On April 13th, without complaint, the corporation remitted a part of the purchase price, and sought and secured an extension of the remaining payment until June 15th, and on May 19th, still without complaint or a suggestion of rescission, it sought a further extension. No formal notice of rescission was ever served on the seller, and no suggestion of a right to rescind was ever conveyed to him, until in June, 1910, when an attorney stated in an informal way that the corporation wished to rescind. Nothing further was done until suit was brought in December to recover damages for the fraud. *Held*, that there was no such prompt, unequivocal, and unevasive announcement of the corpora-

tion's rescission as the law required; the facts, on the contrary, making a strong showing of ratification after discovery of the fraud.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 313–317; Dec. Dig. ☞126.]

Smith, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Missouri; Wm. H. Pope, Judge.

Action by the Jackson Zinc & Lead Company against J. F. Ripley and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with instructions.

Allen McReynolds, of Carthage, Mo. (McReynolds & Halliburton, of Carthage, Mo., on the brief), for plaintiffs in error.

A. E. Spencer, of Joplin, Mo. (George J. Grayston, of Joplin, Mo., on the brief), for defendant in error.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

ADAMS, Circuit Judge. This was an action at law, brought by the Jackson Zinc & Lead Company, a corporation duly incorporated under and pursuant to the laws of South Dakota, against defendants, plaintiffs in error here, to recover damages for fraud alleged to have been perpetrated upon plaintiff in the sale to it of a certain mill and mining machinery. There was a verdict and judgment for plaintiff, for reversal of which this writ of error is prosecuted.

The petition filed by plaintiff in the District Court alleged that it owned an undeveloped mine in Joplin, in the state of Missouri, and, requiring the installment of a mill and mining machinery for its development and operation, engaged the services of defendant Tatum, an experienced mining engineer, to select and negotiate for their purchase; that defendant Ripley, being the owner of a mill and machinery of the general character of that needed by plaintiff, knowing that Tatum was such agent of plaintiff and thus knowing of the confidential relations existing between plaintiff and Tatum, corrupted the agent by offering and subsequently paying him the sum of $1,000 to bring about the sale of his mill and machinery to plaintiff at an exorbitant price; that so defendants Ripley and Tatum conspired to induce and did on February 14, 1910, induce plaintiff to purchase Ripley's mill at the price of $6,750, far in excess of its fair and reasonable value. By the terms of the agreement of sale plaintiff was to pay $4,000 within 10 days, or on or before February 24, 1910, and the balance, $2,750, within 60 days, or on or before April 14, 1910, and to secure the payment of these installments of purchase price by chattel mortgage upon the mill and machinery. Plaintiff further alleged that thereafter, and before it discovered the fraud which had been perpetrated upon it, it paid the first installment of $4,000, and a further installment of $750, and that immediately upon the discovery of the fraud it rescinded the contract of sale, and notified both of the defendants that it rescinded and repudiated the same, and offered to return and redeliver to defendant Ripley all the property purchased,

and demanded the return of the sum of $4,750 which it had so paid to Ripley.

The answer was a general denial, and thus two issues (1) of the perpetration of the fraud as alleged and (2) of the timely rescission of the contract as alleged were joined. Upon the trial evidence was produced pro and con upon these issues, and at the close of all the proof the defendants requested the court to instruct the jury to find a verdict in their favor. This request was refused, to which due exceptions were taken, and on submission of the cause to the jury a verdict and judgment resulted in favor of plaintiff for $4,750, and this writ of error followed.

Counsel for plaintiffs in error contend that the court erred in refusing to give the peremptory instruction requested by them for the following reasons: Because there was no substantial evidence tending to show that Tatum was employed as the confidential agent of plaintiff, or, if so employed, that defendant Ripley had any knowledge of that relationship when he sold the mill to plaintiff through the agency of Tatum. They also contend that it conclusively appears that plaintiff did not rescind the contract of sale promptly on discovery of the fraud.

[1, 2] In the view we take of the last question, it is unnecessary to consider the first. If a conspiracy was formed by defendants, involving the corruption of plaintiff's agent, to dispose of Ripley's mill to plaintiff in the way and manner charged in the petition, plaintiff undoubtedly had a right under the well-settled doctrine of this court to rescind the contract in question. Blank v. Aronson, 109 C. C. A. 327, 187 Fed. 241; Cunningham v. Pettigrew, 94 C. C. A. 457, 169 Fed. 335; Walker v. Pike County Land Co., 71 C. C. A. 593, 139 Fed. 609. But the right to rescind a contract of the kind in question is conditional upon the requirement that the party defrauded announce his purpose to rescind promptly and unequivocally upon the discovery of the fraud practiced upon him. As said in the case of Blank v. Aronson, supra, 187 Fed. page 245, 109 C. C. A. at page 331:

"The well-settled rule on this subject is that one entitled to rescind a contract on the ground of fraud must announce his purpose to do so promptly, unconditionally, and unevasively upon the discovery of the fraud practiced upon him."

As said in Richardson v. Lowe, 79 C. C. A. 317, 149 Fed. 625, 627:

"Vacillation and speculation cannot be tolerated."

As said in Grymes v. Sanders, 93 U. S. 55, 62 (23 L. Ed. 798), and in Shappiro v. Goldberg, 192 U. S. 232, 24 Sup. Ct. 259, 48 L. Ed. 419:

"Where a party desires to rescind upon the ground of mistake or fraud, he must act upon the discovery of the fraud at once and announce his purpose and adhere to it."

[3] Mr. Lake, the president of the plaintiff company, was a witness on behalf of his company at the trial. From his testimony it appears that on April 5, 1910, he, with some 14 or 15 stockholders of the company, went from their home in Jackson, Mich., to Joplin, Mo.,

where their company was engaged in business, and where defendants Tatum and Ripley both resided, to make an investigation into the affairs of their company. As such witness he was asked the questions and made the answers as follows:

"Q. Now, Mr. Lake, you came to Jasper county in April with your stockholders. At that time you discovered that this alleged fraud had been perpetrated upon you, didn't you? A. Yes; that was our conclusion. Q. You concluded in April this alleged fraud had been perpetrated upon you; that is correct, isn't it? A. I wouldn't want to be positive as to the day. * * * Q. You were satisfied of that from the investigation you made? A. We felt that way. Q. That feeling that existed among all of you that you had been imposed upon? A. Yes, sir. Q. You talked it over among yourselves? A. Yes, sir. Q. Discussed what you would do? A. No, sir; we did not discuss what we would do; not at that time. * * * Q. You went back home then from here [Joplin]? A. Yes, sir. Q. When you got back home, you took up the question of what you would do in regard to this fraud? A. Yes, sir; the board of directors did. Q. The board of directors did? A. Yes, sir. * * * Q. You did not determine then exactly what you would do? A. No, sir; took it under advisement. Q. Took it under advisement, and left it under advisement until June? A. We had correspondence with regard to it and with attorneys; left it in their hands. Q. It took you from April to June to determine that you wanted to rescind this contract? A. Not necessarily that length of time."

The evidence discloses that Mr. Lake and his associate stockholders were in Joplin making their investigation from the 7th day of April until the 9th, and that on the 9th day of April they returned to their home at Jackson, Mich. This evidence, the meaning and effect of which was not changed by other evidence in the case, establishes, in our opinion, that the president, board of directors, and a large body of the stockholders of plaintiff company learned of the fraud claimed to have been practiced upon the corporation by defendants as early as April 7 or 8, 1910, and at the time of its discovery the president, with many stockholders, was at Joplin, where the mill was being operated, and where the perpetrators of the fraud resided and could readily have been found, but instead of utilizing the information then possessed, and availing themselves of the favorable opportunity of announcing their intention to rescind the contract, they returned to Michigan and took up the matter with the board of directors, and they took it under advisement. Nothing further appears to have been done until April 13, 1910, when plaintiff, without making any complaint to defendants or either of them, remitted $750 to defendant Ripley in further payment of the purchase price of the mill, and sought and secured an extension of the remaining payment of $2,000 for 60 days, or until June 15, 1910, and not only that, but on May 19, 1910, still without a word of complaint and without a suggestion of rescission, sought a further extension of the payment of the installment due June 15th; plaintiff by its president then writing a letter as follows to defendant Tatum:

"Referring to matter of payment of balance due on mill, fear it is going to be a little strenuous for us to get around by 15th. * * * This being so, wish you would take matter up with Ripley, to see if we cannot have another 30 days, and believe it is only fair to us that we should, under the circumstances. Possibly we might want 60 days; but, as you well know, matters of

the kind do not move as rapidly as general business, therefore we meet with obstacles which must be surmounted. Awaiting your prompt reply, beg to remain.

> "Yours very truly,                    [Signed]   Robt. Lake, President."

So far not a word of exercising the right of rescission on the ground of fraud, but, on the contrary, plaintiff gave repeated assurances of condoning the fraud and ratifying the contract, notwithstanding the fraud. No formal notice of rescission of the contract on account of fraud was ever served on defendants, and no suggestion of a right of rescission was ever conveyed to defendants until some time in June, 1910, when an attorney, a Mr. Grayston, visited Mr. Ripley and said to him, on behalf of the Zinc & Lead Company, in what seems to us a very informal, indifferent, and apologetic way for a person so grievously defrauded as plaintiff claims to have been:

"I wished to rescind this contract and have him take this property back, and demanded the return of the $4,750 that had been paid."

Nothing further was done until this suit was brought December 9, 1910. In view of the conduct of plaintiff, as above recited, from and after the time it acquired knowledge of the fraud practiced against it, we think it conclusively appears that plaintiff failed to make a showing of a prompt, unequivocal, and unevasive announcement of its rescission of the contract as the law required of it. On the contrary, we think the proof makes a strong showing of a ratification of the contract after the discovery of the fraud.

The judgment of the District Court is reversed, and the cause remanded to that court with instruction to grant a new trial.

SMITH, Circuit Judge, dissents.