### WINE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 1, 1919.)

No. 5290.

1. POST OFFICE ⬖35—USING MAILS TO DEFRAUD; DEFENSE.

    Under an indictment for violation of Criminal Code, § 215 (Comp. St. § 10385), by using the mails to obtain property by means of false and fraudulent representations, by which defendant induced others to pay for two ranches, one of which was conveyed to them and the other to defendant, in 'the belief that they were paying only their share of the purchase price, it is no defense that the ranch acquired by such others was worth the amount they paid.

2. FRAUD ⬖18—FRAUDULENT REPRESENTATIONS TO VENDEE AS TO COST.

    The misrepresentation to a vendee by the agent of the vendor, or by the vendor himself, of the cost to the vendor of land, made to induce the vendee to purchase, is a misrepresentation of a material fact, which, if relied upon by the vendee, to his damage, constitutes actionable fraud.

3. POST OFFICE ⬖35—USING MAILS TO DEFRAUD; PECUNIARY LOSS.

    Under Criminal Code, § 215 (Comp. St. § 10385), making it a criminal offense to use the mails for executing a scheme to defraud, or to obtain property by means of false and fraudulent representations, it is not an essential element of the offense that the victims of the scheme should have suffered pecuniary loss.

4. CRIMINAL LAW ⬖406(1)—EVIDENCE; ADMISSIONS.

    Admission in evidence of letters written by defendant, on trial for using the mails to defraud, containing admissions against interest, *held* not error.

---

⬖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Criminal prosecution by the United States against David G. Wine. Judgment of conviction, and defendant brings error. Affirmed.

T. J. Doyle, of Lincoln, Neb. (P. W. Scott, of Imperial, Neb., on the brief), for plaintiff in error.

T. S. Allen, U. S. Atty., of Lincoln, Neb. (F. A. Peterson, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. Section 215 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1130 [Comp. St. § 10385]) provides that:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, * * * addressed to any person residing within or outside the United States, in any post office, or station thereof, or street or other letter box of the United States, * * * shall be fined not more than $1,000 or imprisoned not more than five years, or both."

[1] The defendant below was indicted, convicted and sentenced for a violation of this section, and he complains of many alleged errors in the trial, the chief of which are that the indictment fails to charge facts sufficient to constitute a violation of the statute and that there was no substantial evidence of such a violation because, although the indictment charged and there was substantial evidence to prove that the defendant by fraudulent pretenses, false representations and promises, induced William J. Van Dyke and Theodore F. Slifer to purchase and to agree to pay $30,000 to the owners for 1,760 acres of land and the assignment of a lease of 480 acres of school land in such a way that the defendant could obtain 1,560 acres of other like land from the same owners for nothing, and while the defendant used the mails to execute this scheme, yet because the 1,760 acres bought by Van Dyke and Slifer were worth all they agreed to pay for them, and they sustained no pecuniary loss from the transaction, the defendant was guilty of no violation of the statute. The indictment and the substantial evidence upon the trial disclosed these facts:

In 1914 and 1915 the defendant had possession under a lease from S. A. Keller, who, as owner or as agent of the owner, had the power to lease and sell all this land and to assign the lease of the school land, of 3,320 acres of land and a lease of the 480 acres of school land, situated in Nebraska, and consisting of two ranches. The east ranch comprised 1,560 acres, and on that ranch the defendant resided. The west ranch contained 1,760 acres and the 480 acres of school land. Van Dyke and Slifer resided in Kansas. Laying aside many corroborating circumstances and details, which are not material to the determination of the legal questions now at issue, the defendant devised and executed this scheme: He falsely represented to Van Dyke and Slifer that the cost of the entire 3,320 acres, including both ranches and the assignment

of the school lease, was $58,000, or $17.47 an acre for the 3,320 acres; that the owners would not sell a part unless they sold all of this land; that he wanted the east ranch, but that he was not able to buy both ranches; and that, if they would join with him in the purchase of the 3,320 acres and the lease of the school land, they three would divide the tracts, and he would take and pay for the east ranch, while they should take and pay for the west ranch at the same rate per acre. By these and other persuasive false representations and promises, such as that he was paying for the east ranch at exactly the same rate that they were paying for the west ranch, that he would not get a dollar out of this deal, and that the terms of his contract of purchase were the same as the terms of their contract of the purchase of the west ranch, and by manipulating deceitfully the contracts between himself and the vendors, and those between himself and Van Dyke and Slifer, he induced them to buy the west ranch for $30,000, to move their families and cattle from Kansas onto this ranch, and to pay a part and agree to pay the remainder of this $30,000, which was in fact the cost and the entire cost and price for which the owners agreed to sell and did sell the entire 3,320 acres comprising both the east ranch, which the defendant would obtain for nothing under this scheme, and the west ranch and the lease of the 480 acres of school land, which Van Dyke and Slifer obtained the contract for sale of.

There was no averment in the indictment, nor was there any evidence, that the west ranch was not worth the $30,000, which Van Dyke and Slifer agreed to pay for it, and the court below charged the jury that, although the land was worth the full $30,000, yet they might find, if the evidence convinced them thereof beyond doubt, that the defendant's representations as to the cost of the land were false, that they were reasonably adapted to defraud, and that the defendant was guilty of a violation of the statute. Counsel forcibly argue that this is an erroneous view of the law, and that there can be no violation of this section unless the misrepresentations, false pretenses or promises caused pecuniary loss to the victim or victims thereof.

[2] But even when parties are strangers, dealing with each other at arm's length, under the rule caveat emptor, the misrepresentations to a vendee of the agent of the vendor, or by the vendor himself, of the cost to the vendor of land or other property, made to induce the vendee to purchase, is a misrepresentation of a material fact, which, if relied upon by the vendee to his damage, constitute actionable fraud. Dorr v. Cory, 108 Iowa, 725, 78 N. W. 682; Stoney Creek Woolen Co. v. Smalley, 111 Mich. 321, 69 N. W. 722; Yeoman v. Lasley, 40 Ohio St. 190; Thompson v. Koewing, 79 N. J. Law, 246, 75 Atl. 752; Hokanson v. Oatman, 165 Mich. 512, 131 N. W. 111, 35 L. R. A. (N. S.) 423.

The defendant was not a stranger to Van Dyke and Slifer. They were Dunkards, and he was a minister and their brother in the faith. He orally agreed with them that they three should purchase these 3,320 acres jointly, that each should pay $500 down in cash, and Van Dyke and Slifer did pay that amount down, and that the 3,320 acres should be divided between them, so that the defendant should have and pay the same rate per acre for the east ranch that Van Dyke and Slifer

should pay for the west ranch. He then negotiated the purchase from Keller for about $30,000, or $9.22 per acre, for the entire 3,320 acres, told them that the cost and price of these acres was $58,000, or $17.47 per acre, and by that misrepresentation induced them to pay and agree to pay about $17.47 per acre for the west ranch, so that he should obtain the east ranch without any payment. After this verbal agreement to purchase the 3,320 acres together and divide them, so that each should pay the same price per acre for the land he obtained, and after Van Dyke and Slifer had each paid down $500 in cash on this agreement, the defendant was in such a relation of trust and confidence with them that the legal duty was imposed upon him to inform them of every fact material to the purchase, and his misrepresentation that the price and cost of the land was $58,000, or $17.47 per acre, when it was in fact $30,000, or $9.22 per acre, was a misrepresentation of a material fact, and a breach of his plain moral and legal duty as a fiduciary.

And, since the record contains substantial evidence that this misrepresentation induced Van Dyke and Slifer to pay and agree to pay about $30,000, or $17.47 per acre, for the west ranch, when under their verbal agreement with the defendant, and their payment of $500 each thereon, they were required to pay only about $16,000, or $9.22 per acre therefor, this representation was an actionable fraud, which caused pecuniary damage to Van Dyke and Slifer to the amount of about $14,000, if their verbal agreement with the defendant was legally binding, and to the amount of the $500 each which they had paid down, even if it was not so, and this although the west ranch was worth the $30,000 they paid and agreed to pay for it. Walker v. Pike County Land Co., 139 Fed. 609, 71 C. C. A. 593; Johnson v. Gavitt, 114 Iowa, 183, 86 N. W. 256.

[3] Moreover, this statute declares that any one who devises a scheme "to defraud," or "for obtaining money or property by means of false or fraudulent pretenses, representations or promises," and uses the mails to execute it, shall be fined or imprisoned. The indictment and the evidence are alike replete with charge and the latter with proof that this defendant devised a scheme to obtain for himself the east ranch free of all cost to himself by means of false and fraudulent pretenses, representations and promises, and that he used the mails to execute that scheme. This was a plain violation of the literal terms of the statute, and even if this violation had caused no pecuniary loss or damage to Van Dyke or Slifer, the defendant could not escape punishment for so glaring a deceit without a repeal or disregard of this law; and it is the duty of the court not to repeal or disregard this statute, but to enforce it. This section of the statute does not make damage or loss to the victims of a scheme to defraud, or to obtain money or property by false pretenses, representations or promises, a sine qua non of its violation, and such damage or loss is not indispensable to the commission of an offense under it. Harris v. Rosenberger, 145 Fed. 449, 76 C. C. A. 225, 13 L. R. A. (N. S.) 762; Durland v. United States, 161 U. S. 306, 315, 16 Sup. Ct. 508, 40 L. Ed. 709; United States v. New South Farm Co., 241 U. S. 645, 36 Sup. Ct. 505, 60 L. Ed. 890, Ann.

Cas. 1917C, 455; Chambers v. United States, 237 Fed. 521, 150 C. C. A. 395. There was no error in overruling the demurrer to the indictment, in refusing to direct the jury to return a verdict for the defendant, or in charging the jury that they might find the defendant guilty, although the land he induced Van Dyke and Slifer to buy was worth what they agreed to pay for it.

It is specified as error that the court refused to permit the defendant to prove that during the year 1915 the west ranch was worth $25 per acre. Conceding that this evidence was material and admissible, its rejection was not prejudicial to the defendant, because the legal presumption was that the west ranch was worth all that Van Dyke and Slifer agreed to pay for it, there was no evidence to the contrary, and the case was tried and the jury was charged on that theory and assumption.

[4] Defendant's counsel complain of the admission in evidence of a letter dated April 21, 1915, written by the defendant to Van Dyke, in which the former inclosed a contract between himself and Van Dyke and Slifer, dated February 12, 1915, signed by himself for the purchase by them of the west ranch from him. The only objection to its admission made in the trial was that it was incompetent, irrelevant and immaterial. Counsel now contend that the letter should have been rejected because it was written after the purchase of the land and the payment of $1,000 of the purchase price by Van Dyke and Slifer. But the letter was not objected to at the trial on that ground, and the general objections made were insufficient to suggest that ground to the court. Not only this, but, if it had been suggested, it would not have been tenable, because, while Van Dyke and Slifer had orally agreed prior to the date of this letter to join with the defendant in the purchase of the 3,320 acres for $58,000, on the basis that each of the three should pay $500 in cash on the purchase price, and Van Dyke and Slifer had each paid $500, yet the defendant had not paid his $500, and no written, and hence no binding, agreement of purchase had been made by either Van Dyke or Slifer. Moreover, the letter was competent and material evidence, because in it the defendant wrote the false statement that the contract included in it was an exact copy of the one the defendant and Keller had entered into, and because in the letter he figured and wrote out the amount Van Dyke and Slifer were to pay, and the amount which, in the contracts he sent and they subsequently signed, they agreed to pay, on the basis of $58,000 for the entire 3,320 acres, comprising the two ranches.

Counsel argue that the admission of the defendant's letter of April 15, 1916, to Van Dyke, was erroneous, because that letter was immaterial; that objection, however, was rightly overruled, because that letter contained the false statement, "You will want, and I want you to have, a contract identical with mine."

Complaint is made of the admission in evidence, over the objection that they were immaterial, of two letters of the defendant to Mr. Keller, one dated November 30, 1914, and the other dated February 22, 1915. In the former he wrote Mr. Keller to remember to figure high enough in giving him quotations, so that his improvements, $1,800 on

the west ranch and $1,000 on the east ranch, could come out of the price, and that this was all the compensation he should ask for his work, should he be able to sell the property. This written statement of the defendant was material evidence, in the light of the fact that he told Van Dyke and Slifer that he was getting nothing, no·commission out of the deal, and because it tended to prove that he was acting at the same time as agent for the sellers and for the purchasers in this transaction.

In the letter to Mr. Keller of February 22, 1915, he wrote him that he had made a written agreement with Van Dyke and Slifer for the sale of the land, and that he had set forth in this letter the text of that agreement. That text, as it appeared in this letter, read in substance that the defendant had agreed to buy for Slifer and Van Dyke the entire 3,320 acres, and an assignment of the school lease of 480 acres, for $30,000, and that Van Dyke and Slifer had agreed to pay therefor this $30,000 on certain terms therein set forth. This letter was material evidence of the defendant's scheme and intention to buy all the land for $30,000, and to have Van Dyke and Slifer pay for all of it, and it was also evidence of the inconsistent position of agent for the seller and for the purchasers, which the defendant occupied. These letters contained admissions of the defendant against his interest at this trial, and there was no error in overruling the objection to their admission.

Counsel for the defendant made 30 specifications of error. Those which they appear to have deemed most important have been discussed. All of the others have been carefully read and considered, among them some which counsel have not deemed of sufficient account to search out and cite the pages in the bill of exceptions where the exceptions and rulings they assign can be found; but no error that could have been prejudicial to the defendant has been discovered in the trial of this case.

The judgment below must therefore be affirmed; and it is so ordered.